Argued January 10, affirmed April 1, 1975

## STATE OF OREGON, *Petitioner, v.* SHARON KAY BOYD, *Respondent.*

533 P2d 795

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed briefs for respondent.

O'CONNELL, C. J.

The Court of Appeals affirmed the dismissal of an indictment charging defendant with criminal activity in drugs (ORS 167.207) on the ground that prosecution was barred under our decision in *State*

*v. Brown,* 262 Or 442, 497 P2d 1191 (1972) because of a prior prosecution of defendant for theft (ORS 164.055). We allowed the petition for review in this case in order to attempt a clarification of the meaning of the phrase "same act or transaction" employed in *State v. Brown,* and the phrase "same criminal episode" found in ORS 131.515 (2).

The facts of this case are undisputed. During January of 1974, the Eugene Police Department came into possession of information which gave them probable cause to believe that defendant's husband had burglarized a tavern on December 31, 1973. They obtained a warrant to search defendant's home for specified evidence of that crime. In executing the warrant, the police discovered evidence of a number of other crimes, including a television set stolen some months before, a quantity of amphetamine tablets, and more than an ounce of marijuana. Defendant was arrested during the search for criminal activity in drugs and theft of the television set. Both charges were based solely upon her possession of the contraband items.

On January 23, the arresting officers testified before the grand jury as to the discovery of the television and the drugs. An indictment charging defendant with theft of the television issued the same day. A second indictment charging defendant with criminal activity in drugs for possession of the amphetamines was issued February 1, based on the January 23rd testimony of the arresting officers and upon a subsequently received laboratory analysis of the pills found in defendant's house. The state was represented in obtaining both indictments by the same assistant district attorney. It is undisputed that the district attorney's office had full knowledge of both

indictments and the facts underlying them at all conceivably relevant times. There was no attempt to consolidate the indictments for trial.

On April 23, 1974, defendant was tried on the theft charge. No evidence of the concurrent discovery of the narcotics was introduced. The case was submitted to the jury upon the theory that defendant had committed theft solely by virtue of having retained and concealed the television set at the time of the search. The jury found defendant to be not guilty of this charge.

On May 7, 1974, defendant moved to dismiss the drug indictment on the ground that trial of the theft charge had placed defendant in jeopardy as to the same "act or transaction." The trial court granted this motion upon the authority of *State v. Brown, supra.* A majority of the Court of Appeals affirmed in the belief that two crimes of possession occurring simultaneously constitute a single act or transaction under *Brown.* The majority explicitly noted the inherent lack of certainty in the "single act or transaction" concept, saying that

> "Although we are frankly uncertain about the exact metes and bounds of the concept of a single act or transaction, we find the defendant's analysis in this case to be somewhat more persuasive." *State v. Boyd,* 527 P2d 128, 132 (1974).

The dissent agreed that the problem before the court lacked definition but felt that the two charges did not constitute a single episode because they were related only by the accident of their simultaneous discovery.

The Court of Appeals' opinions in this case ac-

curately describe the confusion and perplexity which has followed in the wake of our decision in *State v. Brown, supra.* The majority and dissenting opinions in the court below demonstrate the difficulty of applying the "one act or transaction" or "single criminal episode" concepts to specific fact situations. This difficulty is inherent in any case where an attempt is made to apply a highly abstract term to a particular set of facts. In such an attempt it frequently becomes apparent that there is no way to explain on rational grounds the reason for treating the facts as falling inside or outside the category. This is the situation we find ourselves confronted with in the present case.

The criteria employed in deciding whether multiple charges constitute a unitary transaction under the double jeopardy principle must relate to the purposes which the prohibition of double jeopardy serve. Although the proscription against double jeopardy has been explained as serving certain non-constitutional objectives,[1] the explanation for the doctrine as a constitutional precept is the protection of the accused from undue harassment. But, as has been pointed out, this "is no standard because it does not tell us how much harassment is required to invoke the principle."[2] Thus, if the one transaction or single criminal episode test is to be measured by the standard of undue harassment, we simply substitute one high level abstraction for another and therefore come no closer to a work-

---

[1] For example, the more efficient administration of the criminal law by disposing of related charges in one prosecution and as a "vehicle carrying the res judicata principle in the criminal law, supported by all the reasons for finality * * *." Fisher, Double Jeopardy: Six Common Boners Summarized, 15 UCLA L Rev 81, 90 (1967). *See also,* M. Friedland, Double Jeopardy 3-14 (1969).

[2] 15 UCLA L Rev 81 at 90, *supra* Note 1.

able test for determining whether two or more charges are unitary for the purpose of the double jeopardy rule.

*State v. Brown, supra,* which fathered the one transaction - one offense equation, did not elaborate upon the meaning of "the same act or transaction," except to say that "[a] prosecutor who is or should be aware of the facts ought not to be able, in his sole discretion, to subject a defendant to a series of trials for violations which are part of the same course of conduct and which could be tried together." (262 Or at 457.)

As observed in the majority opinion in this case below, our cases subsequent to *State v. Brown* do not attempt to explain the scope of the one transaction concept. Finding no guidelines in our opinions, the Court of Appeals, in *State v. Sanchez,* 14 Or App 234, 237, 511 P2d 1231 (1973), Supreme Court rev. den., ventured the hypothesis that "the Supreme Court intended that what constitutes a criminal transaction for purposes of ORS 132.560(2)[®] also constitutes a criminal transaction for purposes of the *Brown* rule." This conclusion was reached principally upon the ground that in *Brown* the court noted that the two offenses involved in that case could have been joined under ORS 132.560(2), the permissive joinder statute. It was further noted that in *State v. Huennekens,* 245 Or 150, 152, 420 P2d 384 (1966), we held that under ORS 132.560(2), "to be joined the charges must relate

_____

[®] ORS 132.560(2) provides: "When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

to conduct or acts that are concatenated in time, place and circumstances and that the evidence of one charge would be relevant and admissible with the evidence of other charges." This test of joinable charges, based upon relevance and admissibility, was rejected as being too broad in *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973), and a new definition of joinability was fashioned as follows:

> "We hold that the two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge."

We went on to hold that under the foregoing test a charge of escape from prison and a charge of the unauthorized use of a motor vehicle following the escape were not joinable.

It is important to note that in *Huennekens* and *Fitzgerald* the court was concerned with defining a unitary transaction for the purpose of determining whether it was *permissible* to join multiple charges; these cases did not purport to say that the same test would be applicable to determine whether the charges *must* be joined under the double jeopardy principle.

The distinction was recognized by the Criminal Law Revision Commission in drafting the 1973 Criminal Procedure Code. The double jeopardy section (ORS 131.515(2)) provides that "[n]o person shall be separately prosecuted for two or more offenses based upon the same criminal episode * * *." A criminal episode is defined by ORS 131.505(4) as "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circum-

stances that such conduct is directed to the accomplishment of a single criminal objective."

1, 2. In the commentary to the proposed draft ·of ORS 132.560(2), the Commission, after referring to the test laid down in *Huennekens,* observes:

"\* \* \* The difference in definition is that a criminal episode is directed to a single criminal objective (compulsory joinder) while a criminal transaction would include crimes where evidence of one offense would be relevant to evidence of another crime (permissive joinder)." Criminal Law Revision Commission, Proposed Oregon Criminal Procedure Code, comment to § 84, p. 50 (1972).

At the time the Commission's commentary was written, *State v. Fitzgerald,* narrowing the test in *Huennekens,* had not been decided. There is, therefore, no way of knowing whether the Commissioners would have regarded the narrower test of *Fitzgerald* as the equivalent of the narrower test intended to be expressed in the statutory definition of "same criminal episode" in ORS 131.505(4). We believe that there is such equivalence. We are unable to conceive of "continuous and uninterrupted conduct \* \* \* so joined in time, place and circumstance" that such conduct is directed to the accomplishment of a single criminal objective, which at the same time would not fulfill the test of *Fitzgerald* and be "so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge."[4] (267 Or at 273.) We hold, there-

---

[4] This finding of equivalence is dependent upon the meaning given "circumstances" and "directed to the accomplishment of a single criminal objective" in ORS 131.505(4). It is *possible* to construe these terms so narrowly that "same criminal episode" would fail to include a wide range of cases which fall clearly

fore, that "same criminal episode" in ORS 131.515(2) is synonymous with same transaction in ORS 132.560(2).

■ In deciding whether multiple charges should be joined, the prosecutor and the trial judge may start, then, with the initial guideline that if a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution. We construe this test of interrelated events as necessitating joinder only where the facts of *each* charge can be explained adequately only by drawing upon the facts of the other charge. Stated differently, the charge must be cross-related.[9]

within the intention of *Brown*. Even the facts of *Brown* itself might not fall within a narrow reading of ORS 131.505(4). We cannot presume, however, that the legislature intended to enact legislation guaranteeing less than "the minimum protection our constitution requires" (State v. Brown, 262 Or at 457). It is our duty to resolve any doubts we might have as to the intended scope of the concept in favor of the construction which renders the statute constitutional. Moreover, it is preferable that we decide that "same criminal episode" means the "same act or transaction" as defined in *Fitzgerald* and thus put the matter to rest, rather than leave the question of the relationship between the concepts open out of uncertainty as to the meaning of the statutory language.

[9] This test, based upon the cross-relationship between the facts of each of the charges is not, however, broad enough to cover all factual situations where the double jeopardy principle would require joinder. It should be observed that the single episode definition in ORS 131.505(4) is formulated upon the hypothesis that the accused has engaged in conduct which involves a sequence of events that flow in a continuous and uninterrupted way and that all of these events can be plotted on a plane of time, as where the accused is charged with killing a teller in the course of robbing a bank, or where a bank cashier makes a series of false reports to the commissioner of banking to conceal a series of thefts of money from the bank.

The statute was not intended to deal with the situation

We regard the *Fitzgerald* test just described as being sufficiently related to the purposes of the double jeopardy concept as to serve as a criterion for application of "single act or transaction" for double jeopardy purposes as well. Whenever multiple charges are as interrelated as the test demands, the failure to join them in the first proceeding is inexcusable and therefore a subsequent attempt by the state to prosecute would constitute undue harassment.

Our clarification of the definition of the terms "same act or transaction" and "same criminal episode" does not remove all of the ambiguity and the difficulty of applying the unitary transaction test to various fact situations. It does allow a reasoned classification of the cases on the ends of the spectrum, either as unitary or as multiple transactions. However, as we move from the two ends toward the middle, the problem of classifying the factual situation becomes more difficult and at some point on the scale rationally definitive classification becomes impossible. If the prosecutor is burdened with making this choice, he runs the risk of forfeiting the opportunity to prosecute again if he improperly severs, or the risk of reversal on appeal if he improperly joins severable charges.

However, it is not necessary that the prosecutor be exposed to these risks. Rather than approaching the problem as one requiring the choice of categories

where there is only *one act* which results in the commission of multiple crimes, as where the accused kills two victims by firing one bullet, or where (under prior Oregon law) the accused is charged with larceny and shoplifting for the same theft, or where, as in State v. Brown, the accused is charged with carrying a concealed weapon and with being a convict in possession of a concealable weapon.

we can, instead, let the choice rest upon considerations which relate to the protection of the interests of the accused the most important of which is, of course, his interest in not being subjected to harassment. To accomplish this end we can turn to the procedural approach first suggested in *State v. Bishop,* 16 Or App 310, 314, 518 P2d 177 (1974), and reiterated in the majority opinion in the present case below, where it was said:

> "* * * [P]rosecutors * * * [should] obtain separate indictments and then make a timely pretrial motion to consolidate the charges for trial. Such a device would require a defendant to make an election as to whether he wants a single trial or separate trials. Such an election would usually either constitute a waiver of *Brown* rights to a single trial, or waiver of *Fitzgerald* rights to separate trials.
>
> "Likewise, trial judges would be well advised to resolve doubts in favor of the defendant's position in such a situation."

By the adoption of this procedure, the instances when error will arise because of improper joinder or severance should be minimal.

■ The practical effect of the foregoing analysis may be summarized as follows. Hereafter, whenever the prosecutor becomes aware of multiple charges facing a single defendant, he must make an initial determination of whether the charges are unitary, that is whether they grew out of a single act or transaction. Unless the prosecutor is absolutely certain that presenting the facts underlying each charge will not necessitate reference to the facts underlying another, the prosecutor should move for joinder of the charges for trial. The defendant may oppose, acquiesce in, or

join in this motion or, if the charges were initially brought together, move for severance. The defendant will thus be forced to make a choice as to joinder or severance which, in the vast majority of cases, should be accepted. Any objections the defendant might make to the prosecutor's choice would thereafter be waived. In the rare case in which the prosecutor would have an interest in opposing the defendant's choice of joinder or severance, the trial and appellate courts will determine whether the charges are unitary by reference to their factual interrelation in terms of the *Fitzgerald* test. In making this determination, the emphasis of necessity will be on the accused's rights to be free from being required to answer more than once for the same act or transaction and to face a trier of fact unprejudiced by damning evidence of extraneous transactions.[*] Because these two rights may appear to conflict before the evidence is actually adduced at trial, the accused's choice should normally be accepted unless clearly improper.

We now turn to a consideration of whether the charges in the present case arise out of the same act or transaction as we have construed the term. This is, of course, precisely the sort of case in which the procedure suggested in *State v. Bishop, supra,* would have prevented an appeal. If the prosecutor had moved to consolidate the indictments for trial, the defendant would have been forced to elect between serving her interest in having the case disposed of in a single adjudication and serving her interest in having sep-

---

[*] *See* Note: Multiple Prosecution and Punishment of Unitary Criminal Conduct—Minn. Stat. § 609.035, 56 Minn L Rev 646, 662-663 (1972); Remington and Joseph, Charging, Convicting, and Sentencing the Multiple Criminal Offender, 1961 Wisc L Rev 528, 536-539.

arate trials so that the evidence of one charge is not interjected into the trial of the other charge. There is no conceivable valid reason why the prosecutor would object to the choice the defendant would have made. That procedure, however, was not followed in this case and therefore it falls upon us to determine whether simultaneous possession of two distinct types of contraband constitute a unitary act or transaction.

■ The nature of the circumstances upon which criminal culpability rests in this situation—the act or circumstances of possession—make it impossible to resolve the question by reference to the *Fitzgerald* test based upon the factual interrelation of the charges. The interrelationship deemed essential in *Fitzgerald* is lacking in the present case because the possession of the separate items of property do not constitute relatable *events* but rather a single *condition* characterized by the manner in which the items are held by the accused. Had defendant been charged with the actual theft of the television set on one occasion and the illegal purchase of drugs at another time, it would be clear enough that the events would be unrelated and therefore obviously not unitary. But the state did not charge defendant with the acts which eventually culminated in defendant's possession of the television set and the drugs. The charge is a single charge of illegal possession of goods at one time and place.

The criminal code treats the fact of possession as a criminal act of a continuing nature. In this statutory sense, the possession of the television set and the drugs, existing at the same place and time, constitute a single occurrence. Once unlawful possession of

goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired. If a defendant is charged with the possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem clear that he would be entitled to object to multiple prosecutions. There would be no reason other than harassment of the defendant for the state to divide the condition of possession into parts and prosecute separately on each. The case should not be treated any differently simply because the items of contraband happen to be of different types. We hold, therefore, that the Court of Appeals properly treated this as a single episode.

The judgment of the Court of Appeals is affirmed.