Argued and submitted December 21, 2000, affirmed December 26, 2001

STATE OF OREGON,
*Respondent,*

*v.*

KEVIN ANTHONY COX,
*Appellant.*

98C43653; A104550

37 P3d 193

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

Armstrong, J., dissenting.

**DEITS, C. J.**

Defendant appeals his conviction, after a jury trial in Marion County Circuit Court, of two counts of aggravated theft and one count of criminal mischief. ORS 164.057; ORS 164.965. Defendant assigns error to the trial court's denial of his motion to dismiss count 2 of the indictment, which alleged the crime of aggravated theft in the first degree, on the ground that he had previously been prosecuted in Multnomah County for the same offense and, accordingly, the Marion County prosecution is barred by double jeopardy under Article I, section 12, of the Oregon Constitution. We affirm.

We state the facts, which are largely undisputed for the purpose of this appeal, consistently with the jury's verdict. Some time between 4:00 p.m. on February 15 and 5:00 a.m. on February 16, 1998, defendant stole over 20,000 pounds of aluminum from Microwave Tower Service in Marion County. On February 17, defendant met with an employee of Metro Metals, Incorporated, a scrap metal dealer, for the purpose of loading, transporting, and selling the aluminum to Metro Metals. Defendant and an accomplice followed the Metro Metals vehicle that transported the load to Portland. Upon arrival, the Metro Metals personnel became suspicious that the aluminum was stolen and contacted the police, who came and, after investigating the matter, arrested defendant and his accomplice.

On February 25, 1998, defendant was charged by indictment in Multnomah County with "Aggravated Theft in the First Degree by Receiving." Count 1 alleged that, on or about February 17, 1998, defendant "did unlawfully and knowingly commit theft of aluminum, of the total value of $10,000 or more, the property of MICROWAVE TOWER SERVICE[.]" On April 16, 1998, defendant pled guilty in Multnomah County Circuit Court to aggravated theft in the first degree "by receiving."

On April 6, 1998, before he entered his plea in Multnomah County, defendant was charged by indictment with aggravated theft in Marion County. On October 28, 1998, defendant was convicted by a Marion County Circuit

Court jury of aggravated theft in the first degree. Count 2 of the Marion County indictment alleged that, "on or between 2/16/98 and 2/17/98, in Marion County, Oregon," defendant did "unlawfully, feloniously and knowingly commit theft of aluminum metal pipes and beams, of the total value of Ten Thousand Dollars or more, the property of Microwave Tower Service."

The statutory provisions relating to theft are set out in ORS 164.015 *et seq.* ORS 164.015 provides, as relevant:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"* * * * *

"(5) Commits theft by receiving as provided in ORS 164.095."

A person commits theft *by receiving* "if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft." ORS 164.095(1). A person commits theft in the first degree if the total value of the property is $200 in a case involving theft by receiving or $750 in any other case. ORS 164.057(1) defines *aggravated* theft in the first degree as theft in the first degree of property (other than a motor vehicle for personal use) having a value of $10,000 or more.

As noted above, defendant pled guilty in Multnomah County to aggravated theft in the first degree by receiving. The question on appeal is whether defendant's prosecution in Marion County for aggravated theft, pending at the time of his guilty plea in Multnomah County, was barred by double jeopardy. Defendant makes no statutory former jeopardy claim.[1] He challenges the Marion County prosecution only on

---

[1] ORS 131.515 provides:

"(1) No person shall be prosecuted twice for the same offense.

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

the ground that it violates the state constitutional double jeopardy provision, which provides that "[n]o person shall be put in jeopardy twice for the same offen[s]e[.]" Or Const, Art I, § 12. Defendant argues that the Marion County prosecution placed him in jeopardy twice for the same offense.

■      Defendant's argument depends on whether the Marion County prosecution was for the "same offense" as the Multnomah County prosecution under Article I, section 12. For purposes of Article I, section 12, the fact that defendant may have violated more than one statute by his conduct is not determinative of this question. Rather, a second prosecution is for the "same offense" for the purpose of Article I, section 12, if: (1) the charges arise out of the same act or transaction; (2) the charges could have been tried in the same court; and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution. *State v. Brown*, 262 Or 442, 457-58, 497 P2d 1191 (1972) (setting out standard); *State v. Ellison*, 301 Or 676, 725 P2d 363 (1986); *State v. Farley*, 301 Or 668, 672, 725 P2d 359 (1986); *State v. Hunt,* 119 Or App 452, 851 P2d 622 (1993). It is not disputed that the charges could have been tried in the same court or that the prosecutor knew of the facts relevant to the second charge at the time of the original prosecution. The critical question here is whether the charges arose out of the same act or transaction.

In our discussion of what constitutes the same act or transaction for purposes of Article I, section 12, we first note that the Oregon courts have incorporated certain aspects of statutory former jeopardy into the constitutional analysis. The statutory former jeopardy provision, ORS 131.515, has consistently been described as providing two separate protections. ORS 131.515(1) sets out the constitutional double jeopardy standard prohibiting more than one prosecution for the "same offense." ORS 131.515(2) has been said to provide *greater* legislative protection than the constitution, barring separate prosecutions, not only for the same offense but for all known charges arising out of the same criminal episode.[2]

---

[2] As noted earlier, we do not directly consider the applicability of subsection (2), because defendant relies only on the constitutional double jeopardy provision. Nor, however, do we "ignore" ORS 131.515(2), as the dissent suggests. As discussed above, much of the statutory analysis has been incorporated into the constitutional analysis.

*State v. Hammang*, 271 Or 749, 757, 534 P2d 501 (1975);[3] *State v. Garnier*, 171 Or App 564, 16 P3d 1175 (2000); *State v. Harris*, 167 Or App 360, 362, 5 P3d 1113 (2000); *State v. Lyons*, 161 Or App 355, 985 P2d 204 (1999);[4] *State v. Delker*, 123 Or App 129, 858 P2d 1345 (1993), *rev den* 318 Or 326 (1994).

Although the Supreme Court has held that ORS 131.512(2) provides greater protection than Article I, section 12, it has equated the phrase "same criminal episode" as used in that subsection of the statute with the phrase "same act or transaction" from Article I, section 12. For example, in *State v. Boyd*, 271 Or 558, 533 P2d 795 (1975), the court said that "the same act or transaction" test that it applied in *Brown* for purposes of Article I, section 12, is synonymous with the phrase "same criminal episode" as used in ORS 131.515(2).[5] The court also said that,

> "if a complete account of one charge *necessarily includes* details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution. We construe this test of interrelated events as necessitating joinder only where the facts of *each* charge can be explained adequately only by drawing upon the facts of the other charges. Stated differently, the charges must be cross-related." *Boyd*, 271 Or at 566 (first emphasis added; second emphasis Supreme Court's).

---

[3] "The legislature intended in ORS 131.515 to do two distinct things. In subsection (1) they restated the constitution which, up to that time, had been held to prohibit only multiple prosecutions based on the 'same evidence.' In subsection (2) they went further, disallowing the separate prosecution of two or more offenses growing out of the same criminal episode." 271 Or at 757.

[4] "The criminal code's former jeopardy provision is codified at ORS 131.515. Subsection (1) of that statute is consistent with the constitutional prohibition against former jeopardy contained in Article I, section 12, of the Oregon Constitution, *State v. Delker*, 123 Or App 129, 132, 858 P2d 1345 (1993), and bars successive prosecutions for the same offense. Subsection (2), which is at issue here, provides *greater* protection for criminal defendants because it bars consecutive prosecutions not only for the same offense but also for all known charges arising out of the same criminal episode." 161 Or App at 360.

[5] Under ORS 131.505(4), criminal episode "means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

In *State v. Hunt*, 119 Or App 452, 851 P2d 622 (1993), a case involving constitutional double jeopardy challenge, we followed the Supreme Court's lead in *Boyd* and referred to the statutory definition of "criminal episode" in considering whether the defendant's separate acts were part of the same "act or transaction." In determining that the defendant's acts were not part of the same criminal episode, we considered it dispositive that the defendant's actions "evinced discrete criminal objectives" and were not "contemporaneous or so closely linked in time, place and circumstances that a complete account of one could not be related without reference to the other." *Hunt*, 119 Or App at 457. We have continued to cite *Boyd* as authoritative. *See, e.g., Lyons*, 161 Or App at 361; *Delker*, 123 Or App at 134.

■    It is defendant's view that, although his activities in Marion and Multnomah counties were not a single act, they were part of a single transaction or the same criminal episode, because

> "[d]efendant's act of contacting a Portland scrap metal firm necessarily was part of the act of stealing the cellular tower. The only way to prove the Multnomah County case was to establish that the tower had been stolen in Marion County. The only way to prove that defendant was involved in the Marion County case was to present evidence of defendant's acts in Multnomah County, *i.e.*, his contacting the scrap metal firm in Portland."

We disagree. Defendant's actions were not contemporaneous or so closely linked in time, place, and circumstance that a complete account of one could not be related without reference to the other. The theft of aluminum in Marion County was a separate act that occurred at a different time and place from defendant's attempt to sell the aluminum in Multnomah County. The theft took place at least one day before the attempted sale of the aluminum. The evidence that defendant was in possession of the aluminum in Marion County was sufficient for him to be guilty of aggravated theft in the first degree without any reference to defendant's attempt to sell the property a day later in Portland. Similarly, the details of the Marion County theft were not necessary to prove his attempt to sell the stolen property in Multnomah County; all the state was required to prove was

that he knew or had reason to know the goods were stolen, not that he stole the goods. Defendant's conduct involved separate acts with discrete criminal objectives. The criminal objective of the first act was to take possession of property that did not belong to defendant. The criminal objective of the second act was to dispose of the stolen property in exchange for money. Defendant's theft of the aluminum and his attempt to sell the stolen property were not part of the same act or transaction. The trial court did not err in denying defendant's motion to dismiss.

Affirmed.

**ARMSTRONG, J.,** dissenting.

Defendant stole a number of disassembled aluminum microwave towers early one Monday morning and, after intentionally damaging them, sold them for scrap on Tuesday. The majority concludes that he could lawfully be prosecuted twice for the criminal offenses that the state charged for that conduct. The majority is wrong. The state violated statutory and constitutional prohibitions against double jeopardy by prosecuting defendant twice for his conduct. Consequently, we should reverse the second of defendant's two convictions.

Defendant and an accomplice stole a forklift, a trailer, and a truck on Sunday or early Monday morning. They used that equipment on Monday morning to steal more than 20 disassembled microwave towers from Microwave Tower Service in Salem and to take them to a remote site in Marion County. Later that day, defendant called Metro Metals in Portland and agreed to sell it portions of the towers as scrap metal. Sometime that same day, defendant stole a backhoe and used it to damage the towers so that they would appear to be scrap. Metro Metals sent a driver and a truck and trailer to Salem on Tuesday morning to pick up the metal. After loading the metal and driving it to Portland, Metro Metals employees concluded that the metal had been stolen. They called the Portland police, who, after conducting an investigation, arrested defendant and his accomplice at Metro Metals.

The state charged defendant in Multnomah County with aggravated first-degree theft by receiving for his actions in disposing of the stolen microwave towers. He pled guilty to that charge. Ten days before he pled guilty, the state charged him in Marion County with aggravated first-degree theft for stealing the microwave towers. The second charge went to trial a number of months later. Before it did, defendant moved to dismiss it on double jeopardy grounds. The court denied the motion. A jury ultimately convicted defendant of the second charge, and the court sentenced him on it. This appeal followed.

Defendant cites only Article I, section 12, of the Oregon Constitution as authority for his contention that the second prosecution violated his right to be free from being prosecuted twice for the same criminal conduct. Consequently, the majority decides the case solely under that provision even though there is a statute, ORS 131.515(2), that protects people against being prosecuted twice for the same conduct and that apparently provides greater protection against multiple prosecutions than does Article I, section 12.[1] I am not sure that we are free to ignore ORS 131.515(2) in deciding this case, even though defendant has not cited it as support for his double jeopardy argument. *See, e.g., Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998).

In any event, the majority's failure to decide this case under ORS 131.515(2) should not affect the result. That is because Article I, section 12, leads to the same result in this case as does ORS 131.515(2).

---

[1] ORS 131.515 provides, in part:

"Except as provided in ORS 131.525 and 131.535:

"* * * * *

"(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

ORS 131.525 and ORS 131.535 have no bearing on the application of ORS 131.515(2) to this case. ORS 131.515(2) applies only if there is a single venue in which the charges can be prosecuted. Here, all the charges for defendant's conduct could have been prosecuted in Marion County. *See* ORS 131.315(1).

As the majority recognizes, Article I, section 12, prohibits successive prosecutions for the same offense. Under that provision, separate criminal charges constitute a single offense if three conditions are met. The only condition in dispute here is the one that requires the charges to arise out of the same act or transaction. The Supreme Court has held that the phrase "same act or transaction" is synonymous with the phrase "same criminal episode" in ORS 131.515(2). *See State v. Boyd*, 271 Or 558, 565-66, 533 P2d 795 (1975) (superseded by statute on other grounds as stated in *State v. Meyer*, 109 Or App 598, 820 P2d 861 (1991). That means that Article I, section 12, and ORS 131.515(2) embody the same basic test for evaluating whether two or more charges can be prosecuted successively. Consequently, in this case, ORS 131.515(2) and Article I, section 12, appear to impose the same prohibition against successive prosecutions.

In *Boyd*, the court identified the following test as one of the tests that, if met, would treat separate charges as part of the same criminal episode, act, or transaction:

> "[I]f a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution. We construe this test of interrelated events as necessitating joinder only where the facts of *each* charge can be explained adequately only by drawing upon the facts of the other charge. Stated differently, the charge must be cross-related."

*Boyd*, 271 Or at 566 (emphasis in original; footnote omitted).[2] Contrary to the majority's view, the two charges in this case meet that test.

The Multnomah County charge of aggravated first-degree theft by receiving cannot adequately be explained without presenting facts about the theft of the microwave towers from Microwave Tower Service in Salem. Defendant

---

[2] The Supreme Court made clear that the above-quoted test does not cover all circumstances in which two or more charges would be considered to be part of the same criminal episode, act, or transaction for purposes of double jeopardy. *Boyd*, 271 Or at 566 n 5. We applied that principle in *State v. Lyons*, 161 Or App 355, 362-64, 985 P2d 204 (1999), to hold that separate charges were part of the same criminal episode even though they did not meet the *Boyd* cross-relationship test.

is guilty of theft by receiving if he received, concealed, or disposed of the stolen microwave towers "knowing or having good reason to know" that they were stolen. ORS 164.095(1). While a prosecutor conceivably could *try* to prosecute defendant in the Multnomah County case without presenting any evidence about the theft of the towers, *an adequate* presentation of the case would require the prosecutor to present evidence about the theft. Evidence about the theft, which occurred the day that defendant called Metro Metals to arrange to dispose of the metal comprising the towers, would be compelling evidence that defendant knew that he had received, concealed, or disposed of stolen property. In light of the circumstances of the theft, there is no other possible explanation for defendant's conduct in contacting Metro Metals, loading the damaged tower components onto the Metro Metals truck, and traveling to Portland to be paid for the metal. No rational prosecutor would try the Multnomah County case without presenting evidence about the theft of the towers from Microwave Tower Service. Consequently, the facts of the theft of the towers would necessarily be presented in the Multnomah County case.[3]

Similarly, evidence about defendant's conduct in calling Metro Metals the day of the theft to arrange to dispose of the metal comprising the microwave towers, in loading the metal onto the Metro Metals truck the next day using a backhoe that had been damaged in the course of mangling the towers to make them appear to be scrap, and in seeking payment from Metro Metals for the scrap metal would necessarily be presented in the Marion County case that charged defendant with stealing the towers from Microwave Tower Service. No rational prosecutor would try the Marion County charge without presenting that evidence, and the prosecutor of that charge did, *in fact*, present that evidence at trial. Even more to the point, defendant would have been entitled to a judgment of acquittal on the Marion County charge if the prosecutor had *not* presented the facts that formed the basis for the Multnomah County charge.

---

[3] Theft by receiving requires proof "that the property was the subject of theft." ORS 164.095(1). To establish that fact in this case, the prosecutor would presumably have to present evidence about the theft of the towers from Microwave Tower Service.

It follows, therefore, that the two charges of which defendant was convicted satisfy the cross-relationship test established in *Boyd* for charges that are part of the same criminal episode, act, or transaction and, hence, that the state could not prosecute the charges in successive prosecutions. The majority errs in concluding otherwise.[4]

Even if the two aggravated first-degree theft charges did not satisfy the *Boyd* cross-relationship test, they still would be part of a single criminal episode, act, or transaction for purposes of double jeopardy.[5] ORS 131.505(4) defines a single criminal episode for purposes of ORS 131.515(2) to mean

> "continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

In *Boyd*, the Supreme Court equated that statutory definition of a single criminal episode with the standard applied in *State v. Fitzgerald*, 267 Or 266, 273, 516 P2d 1280 (1973), for charges that are part of a single act or transaction. *Boyd*, 271 Or at 564-66 & n 4. Consequently, the definition of a single criminal episode in ORS 131.505(4) is understood to represent one formulation of the test that is used to determine whether the successive prosecution of separate charges would impermissibly subject a defendant to double jeopardy.

---

[4] It appears that the majority views the *Boyd* cross-relationship test as one that functions in an idealized world in which prosecutors can prove every fact of a charge without regard to the actual evidence available to them to do that. I do not doubt that, if a surveillance camera had recorded defendant stealing the towers from Microwave Tower Service and the videotape clearly identified defendant as the person doing that, a prosecutor could try the theft charge without presenting evidence about defendant's effort the next day to dispose of the towers as scrap metal. However, those are not the facts of this case. Even if they were, I question whether any rational prosecutor would try the theft case that way. The *Boyd* formulation refers to the facts from one charge that are necessary *to adequately explain* the facts of the other charge. In my view, that formulation applies to the actual facts available to the state, not a hypothetical body of facts. If the facts actually available to the state require the facts of one charge to be presented in order to prosecute another charge, the charges satisfy the *Boyd* cross-relationship test. The facts of this case meet that test.

[5] *See* 178 Or App at 435 n 2 (explains that *Boyd* cross-relationship test is not sole test for whether charges are part of same criminal episode, act, or transaction).

The majority concludes that the two theft charges do not meet that test. In its view, the two charges had separate criminal objectives. The objective of the conduct involved in the Marion County charge was to steal the towers from Microwave Tower Service, and the objective of the conduct involved in the Multnomah County charge was to convert the towers into money. 178 Or App at 432-33. Frankly, that characterization of the events ignores reality.

There is no doubt that defendant's actions over the two- to three-day period in which he stole the forklift, truck, and trailer that he used to steal the microwave towers, stole the towers and delivered them to the remote site in Marion County, called Metro Metals to arrange to sell the metal comprising the towers as scrap metal, stole a backhoe and used it to damage the towers to make them appear to be scrap, used the backhoe to load the damaged towers onto the Metro Metals truck, and drove to Portland to be paid by Metro Metals for the scrap were all part of a single plan that was designed and executed to achieve a single criminal objective: to obtain money for the towers.[6] The complexity of the plan required time to complete it, but every act by defendant, including the acts comprising the two theft charges, was an essential act in the sequence of events by which defendant sought to achieve the plan's single criminal objective: obtaining money for microwave towers owned by Microwave Tower Service. Consequently, the two theft charges were part of a single criminal episode for purposes of double jeopardy.

In summary, the trial court erred in denying defendant's motion to dismiss the Marion County theft charge that sought to punish defendant for conduct that was part of the same criminal episode, act, or transaction for which he had been found guilty in Multnomah County. The majority errs in concluding otherwise.

---

[6] Given the nature of the towers, defendant had no use for them in the form in which he stole them. Intact, they had value only to people involved in the cellular tower construction or transmission business, and defendant was not in those businesses. Furthermore, an employee for Microwave Tower Service testified in the Marion County case that, in his opinion, the stolen towers could only be damaged and sold as scrap, because anyone to whom the thief or others sought to sell them would know that they had been stolen.