Argued and submitted September 9, decision of the Court of Appeals reversed;
circuit court judgment of conviction and sentence on count two reversed
December 31, 2003

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## KEVIN ANTHONY COX,
*Petitioner on Review.*

## (CC 98C43653; CA A104550; SC S49495)

82 P3d 619

Irene B. Taylor, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief was David E. Groom.

Laura S. Anderson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

RIGGS, J.

** Kistler, J., did not participate in the consideration or decision of this case.

RIGGS, J.

Defendant was charged in separate indictments in Multnomah County and Marion County with aggravated theft in the first degree, ORS 164.057, for the theft of over $10,000 worth of aluminum. Defendant pleaded guilty to one count of aggravated theft "by receiving" on the Multnomah County indictment. Approximately five months later, the Marion County Circuit Court denied defendant's motion to dismiss the count of the Marion County indictment alleging aggravated theft of the aluminum. Following trial, a jury convicted defendant on that count.

Defendant appealed his Marion County conviction for aggravated theft of the aluminum.[1] He argued that the second prosecution violated his right not to be placed in jeopardy twice for the same offense under Article I, section 12, of the Oregon Constitution.[2] The Court of Appeals affirmed. *State v. Cox*, 178 Or App 426, 37 P3d 193 (2001). We allowed defendant's petition for review, and, for the reasons set out below, we reverse the decision of the Court of Appeals and reverse in part the judgment of the trial court.

FACTS AND PROCEDURAL BACKGROUND

We take the following facts from the Court of Appeals opinion and the record. Sometime during the night of February 15 and the early morning of February 16, 1998, defendant stole over 20,000 pounds of aluminum from Microwave Tower Service in Marion County. Later in the day on February 16, defendant contacted Metro Metals, Inc., a Portland scrap metal dealer, for the purpose of loading and transporting the aluminum to Portland. On February 17 in Marion County, defendant and an accomplice helped a Metro

---

[1] The Marion County indictment also charged defendant with aggravated theft of a backhoe and criminal mischief. Defendant does not challenge his conviction on those counts.

[2] Article I, section 12, provides that "[n]o person shall be put in jeopardy twice for the same offence." Defendant raised no federal constitutional arguments in the Court of Appeals. In this court, defendant conceded that he preserved no federal constitutional argument in the trial court. Therefore, we do not consider whether defendant's multiple prosecutions violated the federal Double Jeopardy Clause. US Const, Amend V ("* * * nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb * * *").

Metals truck driver load the aluminum onto the driver's truck and followed the driver to Portland. Suspicious about the origin of the aluminum, the driver alerted other Metro Metals employees to the possibility that the aluminum was stolen. Those employees contacted the police, who subsequently arrested defendant and his accomplice.

On February 25, 1998, defendant was indicted in Multnomah County for, *inter alia*, a violation of ORS 164.057.[3] Count One of the indictment was entitled "Aggravated Theft in the First Degree by Receiving" and alleged that, "on or about February 17, 1998, in the County of Multnomah, State of Oregon, [defendants] did unlawfully and knowingly *commit theft* of aluminum, of the total value of $10,000 or more, the property of MICROWAVE TOWER SERVICE[.]" On April 16, 1998, defendant pleaded guilty to that count of the indictment.

On April 6, 1998, after the issuance of the Multnomah County indictment but before defendant's guilty plea,

---

[3] ORS 164.057 provides:

"(1) A person commits the crime of aggravated theft in the first degree, if:

"(a) The person violates ORS 164.055 with respect to property, other than a motor vehicle used primarily for personal rather than commercial transportation; and

"(b) The value of the property in a single or aggregate transaction is $10,000 or more.

"(2) Aggravated theft in the first degree is a Class B felony."

ORS 164.055 provides, in part:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]"

ORS 164.015 provides:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065; or

"(3) Commits theft by extortion as provided in ORS 164.075; or

"(4) Commits theft by deception, as provided in ORS 164.085; or

"(5) Commits theft by receiving as provided in ORS 164.095."

defendant was indicted in Marion County on two counts of aggravated theft and one count of criminal mischief. Entitled simply "Aggravated Theft," the second count of the Marion County indictment also cited ORS 164.057 and alleged that "the defendants on or between 02/16/98 and 02/17/98, in Marion County, Oregon, did then and there unlawfully, feloniously and knowingly commit theft of aluminum metal pipes and beams, of the total value of Ten Thousand Dollars or more, the property of Microwave Tower Service."

Defendant moved to dismiss the second count of the Marion County indictment, arguing that a second prosecution for aggravated theft of the aluminum violated the former jeopardy provision of Article I, section 12. The trial court denied that motion. In September 1998, a Marion County jury convicted defendant on all counts, including the second count of aggravated theft based on the theft of the aluminum.

Defendant appealed, again arguing that the Marion County prosecution violated Article I, section 12. The Court of Appeals affirmed. *Cox*, 178 Or App at 428. Citing *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972), the court perceived the "critical question" to be whether the charges arose out of the same act or transaction. *Cox*, 178 Or App at 430. The court explained that determining whether a defendant's conduct involved the same act or transaction depends in part on whether the defendant's conduct was part of the same "criminal episode." *Id.* at 431 (citing *State v. Boyd*, 271 Or 558, 566, 533 P2d 795 (1975)). The court concluded that the two theft offenses were not the same, because "[d]efendant's actions were not contemporaneous or so closely linked in time, place, and circumstance that a complete account of one could not be related without reference to the other" and because "[d]efendant's conduct involved separate acts with discrete criminal objectives." *Id.* at 432-33.

Judge Armstrong dissented. He argued that both prosecutions required the state to present evidence about the taking of the aluminum in Marion County, thus satisfying the "cross-relationship" test of *Boyd*, 271 Or at 566. Even if the two charges failed to satisfy the cross-relationship test, the dissent concluded that defendant's actions were a single

criminal episode and that only one prosecution was proper. *Cox*, 178 Or App at 437-38 (Armstrong, J., dissenting).

## DISCUSSION

■ In the present case, both the Multnomah County and Marion County indictments alleged that defendant violated the same statute, ORS 164.057. ORS 164.057 incorporates the definition of theft in ORS 164.015.[4] To determine whether defendant has been prosecuted twice for the same offense, our initial inquiry focuses on the legislature's definition of theft in ORS 164.015, and we begin with an analysis of that statute.[5]

As noted, ORS 164.015 provides:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof; or

"(2) Commits theft of property lost, mislaid or delivered by mistake as provided in ORS 164.065; or

"(3) Commits theft by extortion as provided in ORS 164.075; or

"(4) Commits theft by deception, as provided in ORS 164.085; or

"(5) Commits theft by receiving as provided in ORS 164.095."

---

[4] ORS 164.057 defines aggravated theft in the first degree as a violation of ORS 164.055 (subject to certain limitations not relevant here) involving property valued at $10,000 or more. Consistently with the other statutes defining lesser degrees of theft, ORS 164.043 - 164.045, ORS 164.055 provides, in part, that "[a] person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015."

[5] Courts and commentators have described that type of inquiry as a search for the allowable unit of prosecution. *See, e.g., Sanabria v. United States*, 437 US 54, 69-70, 98 S Ct 2170, 57 L Ed 2d 43 (1978); *United States v. Universal C.I.T. Credit Corp.*, 344 US 218, 221, 73 S Ct 227, 97 L Ed 260 (1952); Note, *Twice in Jeopardy*, 75 Yale LJ 262, 311-12 (1965).

ORS 164.095 provides:

"(1)   A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft.

"(2)   'Receiving' means acquiring possession, control or title, or lending on the security of the property."

The parties approach those statutes differently. Defendant argues that ORS 164.015 defines a single offense of theft and that the gravamen of that offense is the deprivation of property, regardless of the means by which such deprivation occurs. Defendant emphasizes that both convictions in this case rested on the deprivation of the same property from the same owner, Microwave Tower Service. The only difference between the two indictments is that the aggravated theft count in Multnomah County alleged "aggravated theft by receiving." Defendant asserts that, under the statute, he committed a single theft offense, for which he could be prosecuted only once consistently with ORS 131.515(1)[6] and Article I, section 12. Buttressing his interpretation, defendant cites as context ORS 164.025, which provides, in part, that, "[e]xcept for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a *single offense.*" ORS 164.025(1) (emphasis added).

The state responds that ORS 164.025 is "procedural," in the sense that it addresses only the pleading and proof required to sustain a theft charge. The state points out that the theft statutes provide no definition of "same offense" for purposes of either ORS 131.515(1) or Article I, section 12. Therefore, the state urges, this court should proceed directly to considering the propriety of the successive prosecutions under the "same elements" test used in federal courts, *e.g.,* *United States v. Dixon,* 509 US 688, 696, 113 S Ct 2849, 125 L Ed 2d 556 (1993) (federal court test "inquires whether each offense contains an element not contained in the other"), or under this court's "same act or transaction" test, *Brown,* 262 Or at 458.

---

[6] ORS 131.515(1) provides that "[n]o person shall be prosecuted twice for the same offense."

Faced with that dispute regarding the interpretation of ORS 164.015, we apply the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Under *PGE*, we look first to the text and context of the statute at issue to determine the legislature's intent. *Id.* at 610. The first level of analysis includes "other provisions of the same statute and other related statutes," *id.* at 611, and "the preexisting common law and the statutory framework within which the law was enacted," *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998). We also consider "the existing rules of substantive law that are relevant to the statute being interpreted." *Osborn v. PSRB*, 325 Or 135, 146, 934 P2d 391 (1997).

To better understand the text of ORS 164.015, we briefly review the historical context of theft offenses in Oregon. *See Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 415-16, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 932 P2d 1141 (1997) (discussing historical context of statute at first level of *PGE* analysis).

The legislature adopted ORS 164.015 in 1971 as part of an overall revision of the criminal code. *State v. Gilbert*, 281 Or 101, 105, 574 P2d 313 (1978). Before the 1971 revision, separate statutes described larceny, embezzlement, and other theft-related offenses. *See, e.g., former* ORS 164.310 - 164.392 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (larceny); *former* ORS 165.005 - 165.040 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (embezzlement); *former* ORS 165.045 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (receiving stolen property); *former* ORS 165.205 - 165.285 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (obtaining property by false pretenses and fraud). Those statutes set out a variety of elements applicable to each offense and prescribed different—and at times inconsistent—penalties, depending on the nature of the larcenous act, the nature of the stolen property, or other factors. *See* Donald L. Paillette, *The Oregon Theft Laws: Consolidation v. Conglomeration*, 51 Or L Rev 525, 526-29 (1972) (criticizing conglomeration of different theft-related statutes in Oregon Criminal Code and variety of penalties attached to related offenses).

■      ORS 164.015 eliminated the problems arising from those separate statutes by consolidating the various forms of unlawful property deprivation into a single offense of theft that does not depend on the relationship between the thief and the owner, the type of property, or the manner of deprivation. ORS 164.015 begins by specifying the required mental state for theft—the "intent to deprive another of property or to appropriate property to the person or a third person." Subsections (1) through (5) then enumerate various means by which a deprivation of property may occur, some of which are defined in separate statutes. ORS 164.065 - 164.095. Other than theft by extortion, however, those separate definitions do not create distinct offenses with their own punishments, as under the pre-1971 criminal code. By defining "theft by receiving," for example, ORS 164.095 does not create a separate crime punishable as a felony or a misdemeanor. Rather, it describes further the type of conduct that constitutes the single offense of theft under ORS 164.015, thereby making irrelevant the technical distinctions that characterized the previous regime of separate statutory offenses. Thus, by bringing various methods of property deprivation under one umbrella, ORS 164.015 creates a single, consolidated offense that, at its core, prohibits the intentional and unlawful deprivation or appropriation of property from its owner.

ORS 164.025 confirms that interpretation. Enacted contemporaneously with ORS 164.015, ORS 164.025 provides, in part:

"(1)   Except for the crime of theft by extortion, conduct denominated theft under ORS 164.015 constitutes a single offense.

"(2)   * * * In all [cases other than theft by extortion,] an accusation of theft is sufficient if it alleges that the defendant committed theft of property of the nature or value required for the commission of the crime charged without designating the particular way or manner in which the theft was committed.

"(3)   Proof that the defendant engaged in conduct constituting theft as defined in ORS 164.015 is sufficient to support any indictment, information or complaint for theft other than one charging theft by extortion. * * *"

ORS 164.025 removes the necessity of specifying the exact manner in which the deprivation occurred. It allows a prosecutor with imperfect information to proceed against a defendant, knowing that a difference between the theft allegation in the indictment and the ultimate proof at trial will not be fatal to the state's case, because the substance of the offense—the intentional and unlawful deprivation of property—is the same. Of course, ORS 164.025 does not eliminate the possibility of violating ORS 164.015 more than once. By making all conduct under ORS 164.015 a single offense, however, ORS 164.025 ensures that the number of thefts will depend on the number of times a person unlawfully deprives another of property, not on the number of different ways in which a person accomplishes a particular deprivation.

Following the state's approach essentially would reverse the consolidation of the theft offenses in ORS 164.015. Under the state's interpretation, the consolidation of larceny, embezzlement, and other offenses into a single theft statute would authorize a prosecutor to divide the separate acts of taking, retaining, concealing, and disposing of the same property from the same victim into different offenses to pursue successive prosecutions. We do not think that the legislature intended such a result, and, in fact, the consolidation of the various forms of theft into a single offense demonstrates precisely the contrary.

Taking a different tack, the state invites us to conclude that the Multnomah County prosecution and the Marion County prosecution involved different victims (based on the subsequent involvement of Metro Metals, the proposed buyer of the aluminum). That is not the offense with which defendant was charged. Whatever inconvenience may have resulted to Metro Metals, that harm is not the focus of ORS 164.015, which prohibits the deprivation or appropriation of property from the owner of the property. In this case, both indictments alleged that Microwave Tower Service was the owner of the stolen aluminum and was the party that suffered the harm that the theft statutes at issue prohibit.

From the foregoing analysis, we conclude that, under ORS 164.015, defendant committed a single offense

of theft by "taking" and "receiving" the aluminum from Microwave Tower Service.

■ Our conclusion that defendant committed only a single theft simplifies our former jeopardy analysis. In this court, defendant argued that the second prosecution for the theft of the aluminum violated the statutory protection against successive prosecutions for the "same offense," ORS 131.515(1), and the constitutional former jeopardy provision, Article I, section 12. Defendant did not cite ORS 131.515(1) until his brief on the merits in this court. Even when the parties frame their arguments only in constitutional terms below, however, we may consider an adequate subconstitutional basis for our decision. *Crocker and Crocker*, 332 Or 42, 46, 22 P3d 759 (2001) ("Although the parties have presented and argued this case solely on constitutional grounds, this court ordinarily will not decide constitutional questions when an adequate subconstitutional basis for decision exists."); *Leo v. Keisling*, 327 Or 556, 562, 964 P2d 1023 (1998) ("[I]t is well established that this court ordinarily does not decide constitutional issues if there is an adequate subconstitutional basis for decision."). Guided by the analytical methodology of *PGE*, 317 Or at 610-12, we begin with defendant's statutory argument.

ORS 131.515(1) provides that "[n]o person shall be prosecuted twice for the same offense." Under ORS 131.505(1), ORS 161.505 controls the meaning of the term "offense" in ORS 131.515(1). ORS 161.505 provides:

"An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime, as described in ORS 161.515, or a violation, as described in ORS 153.008."

ORS 161.515(1) defines "crime" as "an offense for which a sentence of imprisonment is authorized," and ORS 161.515(2) further provides that "[a] crime is either a felony or a misdemeanor."

■ For purposes of our decision in this case, the text of ORS 131.515(1) is clear. Consistently with that statute and the definitional statutes that it incorporates, a defendant

may not be prosecuted twice for conduct that the legislature has defined as a single crime. That is, ORS 131.515(1) prohibits a prosecutor from dividing a single crime into multiple parts and successively prosecuting a defendant two or more times on that basis.

In this case, the state pursued precisely that strategy. As we have explained, defendant's separate acts of taking and receiving the same aluminum from the same owner constituted a single theft under ORS 164.015 and, therefore, a single crime of aggravated theft under ORS 164.057. It follows that the state violated ORS 131.515(1) when it divided those different acts into two allegedly separate crimes to institute successive prosecutions for aggravated theft.[7]

The legislature's definition of the offense of theft and the statutory protection against successive prosecutions under ORS 131.515(1) are dispositive in this case, and, therefore, our task is at an end.[8] We conclude that, under ORS 131.515(1), the Marion County prosecution was for the "same offense" as the Multnomah County prosecution and was prohibited by that statute.

The decision of the Court of Appeals is reversed. The circuit court judgment of conviction and sentence on count two is reversed.

---

[7] There are exceptions to ORS 131.515(1), but none of those exceptions applies in this case. The circumstances outlined in ORS 131.525 to 131.535 do not affect our analysis under ORS 131.515(1), and ORS 131.505(3) is inapplicable here. That latter statute provides that "[w]hen the same conduct or criminal episode, though violating only one statutory provision, results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims." As previously noted, because both indictments alleged that defendant deprived a single owner, Microwave Tower Service, of the same property, we reject the contention that defendant's theft involved more than one victim.

[8] For purposes of this case, we need not decide whether and to what extent ORS 131.515(1) differs from the former jeopardy provision of Article I, section 12. In addition, we need not consider whether the second prosecution was for the "same offence" under Article I, section 12, or whether defendant's conduct was part of the "same act or transaction" under *Brown*.