**Electronically Filed
Supreme Court
SCWC-16-0000798
09-MAR-2023
08:27 AM
Dkt. 13 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellant,

vs.

BRONSON SARDINHA,
Petitioner/Defendant-Appellee.

SCWC-16-0000798

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000798; CR. NO. 1PC161000359)

MARCH 9, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND EDDINS, JJ.,
AND WILSON, J., DISSENTING

OPINION OF THE COURT BY NAKAYAMA, J.

This appeal calls upon the court to clarify when multiple offenses arise from the same criminal episode. As this court has articulated, the test for determining the singleness of a criminal episode is based on whether the alleged conduct was so closely related in time, place, and circumstances that a

complete account of one charge cannot be related without referring to details of the other charge. In order for multiple offenses to satisfy the circumstances element of the single-episode test, the alleged offenses must raise similar facts and/or issues such that there is a substantive overlap in evidence between the offenses.

Applying these criteria to the case before us, the Intermediate Court of Appeals (ICA) correctly determined that Hawai'i law does not require the joinder of Petitioner/Defendant-Appellee Bronson Sardinha's traffic offenses with his assault offense. We therefore affirm the ICA's Judgment on Appeal.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    The Traffic Offenses[1]

On November 28, 2015, the Honolulu Police Department (HPD) dispatched Officer Crystal D. Roe (Officer Roe) to a "Motor Vehicle Collision Fled Scene" incident around 10:50 P.M. at the intersection of Farrington Highway and Waipi'o Point Access Road in Waipahu. The fleeing vehicle had struck another

---

[1]    Pursuant to Hawai'i Rules of Evidence Rule 201(c) (1980), this court takes judicial notice of the proceedings in the District Court of the First Circuit in case number 1DTC-15-071381. Judicial notice is appropriate because the proceedings are a significant component of the present inquiry.

vehicle and purportedly bore Hawai'i license plate "GRA-505."

These events constitute the "Traffic Offenses."

After discovering the fleeing vehicle later that night, HPD cited Sardinha for (1) driving a motor vehicle without a valid driver's license, in violation of Hawai'i Revised Statutes (HRS) § 286-102;[2] (2) driving a motor vehicle while his license was revoked, in violation of HRS § 286-132;[3] (3) inattention to driving, in violation of HRS § 291-12;[4]

---

[2] Hawai'i Revised Statutes (HRS) § 286-102(a) (2007) provides:

> No person, except one exempted under section 286-105, one who holds an instruction permit under section 286-220, one who holds a provisional license under section 286-102.6, one who holds a commercial driver's license issued under section 286-239, or one who holds a commercial driver's license instruction permit issued under section 286-236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.

[3] HRS § 286-132 (2007) provides:

> Except as provided in section 291E-62, no resident or nonresident whose driver's license, right, or privilege to operate a motor vehicle in this State has been canceled, suspended, or revoked may drive any motor vehicle upon the highways of this State while the license, right, or privilege remains canceled, suspended, or revoked.

[4] HRS § 291-12 (Supp. 2008) provides:

> Whoever operates any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than thirty days, or both, and may be subjected to a surcharge of up to $100 which shall be deposited into the trauma system special fund.

(4) leaving the scene of an accident involving vehicle damage, in violation of HRS § 291C-13;[5] (5) operating a vehicle after his license was revoked for operating a vehicle under the influence of an intoxicant, in violation of HRS § 291E-62(a);[6] and (6) not

---

[5]     HRS § 291C-13 (Supp. 2008) provides in relevant part:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property that is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or as close thereto as possible, but shall forthwith return to, and in every event shall remain at, the scene of the accident until the driver has fulfilled the requirements of section 291C-14.  Every such stop shall be made without obstructing traffic more than is necessary.

[6]     HRS § 291E-62(a) (Supp. 2011) provides in relevant part:

> No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to . . . section 291E-61 . . . as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:
>
> > (1)   In violation of any restrictions placed on the person's license;
> > (2)   While the person's license or privilege to operate a vehicle remains suspended or revoked; or
> > (3)   Without installing an ignition interlock device required by this chapter.

> HRS § 291E-61(a) (Supp. 2011) provides in relevant part:

> A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
> > (2)   While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;
> > (3)   With .08 or more grams of alcohol per two hundred ten liters of breath; or

possessing a motor vehicle insurance policy, in violation of HRS § 431:10C-104.[7]

On December 28, 2015, Respondent/Plaintiff-Appellant State of Hawai'i (the State) charged Sardinha by complaint with four of the cited offenses. Between December 28, 2015 and March 8, 2016, the State dismissed all of the charges except for the inattention to driving charge, and Sardinha agreed to enter a no contest plea on the inattention to driving charge. The District Court of the First Circuit filed a Notice of Entry of Judgment and/or Order and Plea/Judgment accepting Sardinha's no contest plea on March 8, 2016.

## 2. The Assault Offense

Around 11:50 P.M. on November 28, 2015, HPD dispatched Officers Jon M. Nguyen (Officer Nguyen) and Shayne Sesoko (Officer Sesoko) to a reported argument at Nancy's Kitchen in the Waipi'o Shopping Center. Upon arriving at Nancy's Kitchen, Officers Nguyen and Sesoko determined that a male (later

---

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

[7] HRS § 431:10C-104(a) (2005) provides:

Except as provided in section 431:10C-105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

identified as Sardinha) and a female were the parties to the argument. Although the argument had ended by the time the officers arrived, the officers remained at Nancy's Kitchen while the female waited inside for her mother to pick her up.

As the officers waited, Sardinha remained outside of the establishment with the officers and swore at the officers. Sardinha eventually walked to and got into the driver's seat of a white SUV with Hawai'i license plate "GRA-505." The officers noticed that the vehicle had front-end damage and had the same license plate as the vehicle involved in the Traffic Offenses. Upon recognizing the vehicle, Officer Sesoko informed Sardinha that the vehicle had been involved in a hit-and-run. Sardinha responded that the SUV was not his and that he had not been sitting in the vehicle. Sardinha also continued denigrating the officers and challenged Officer Nguyen to fight.

Around 12:30 A.M. on November 29, 2015, HPD also dispatched Officer Roe to Nancy's Kitchen. Sardinha recognized Officer Roe from an unrelated October 31, 2015 incident, and briefly complied with Officer Roe's request for his personal identification. However, Sardinha continued acting aggressively towards Officers Nguyen and Sesoko.

After receiving Sardinha's personal identification, the officers ran a warrant check on Sardinha. HPD dispatch

informed the officers that Sardinha had a possible contempt warrant. The officers detained Sardinha because of the possible warrant and attempted to place him in a squad car while they waited for confirmation of the warrant. However, Sardinha refused to cooperate and headbutted the right side of Officer Sesoko's face. The officers subsequently arrested Sardinha for assaulting a law enforcement officer. These events constitute the "Assault Offense."

On March 8, 2016, a grand jury indicted Sardinha for Assault Against a Law Enforcement Officer in the First Degree, in violation of HRS § 707-712.5(1)(a),[8] in the Circuit Court of the First Circuit (circuit court).

**B.   Circuit Court Motion to Dismiss[9]**

On August 29, 2016, Sardinha filed a Motion for Dismissal with Prejudice Pursuant to HRS § 701-111 and § 701-109. According to Sardinha, HRS § 701-109[10] required the State

---

[8]    HRS § 707-712.5(1)(a) (2014) provides:

> Assault against a law enforcement officer in the first degree. (1) A person commits the offense of assault against a law enforcement officer in the first degree if the person:
>
> (a)    Intentionally or knowingly causes bodily injury to a law enforcement officer who is engaged in the performance of duty[.]

[9]    The Honorable Glenn J. Kim presided.

[10]    HRS § 701-109 (2014) provides in relevant part:

to try the Traffic Offenses and the Assault Offense together because the offenses arose from a single criminal episode. Citing State v. Keliiheleua, 105 Hawaiʻi 174, 181, 95 P.3d 605, 612 (2004), Sardinha pointed out that the applicable test for determining whether multiple offenses arise from the same episode is "whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Sardinha reasoned that any trial for the Assault Offense would necessarily involve details of the Traffic Offenses because (1) the officers referenced the Traffic Offenses in their reports for the Assault Offense, and (2) Officer Sesoko triggered Sardinha by mentioning that Sardinha's vehicle was in a hit-and-run.

The circuit court heard Sardinha's motion to dismiss on September 28, 2016. During the hearing, Sardinha emphasized

---

(2)   Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

(3)   When a defendant is charged with two or more offenses based on the same conduct or arising from the same episode, the court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

that a key issue for the circuit court to consider was the timing of the two cases.  Sardinha noted that even though the State "could try the [Traffic Offenses] case without mentioning the [Assault Offense] case," it "cannot give a complete accounting of the [Assault Offense] case without mentioning the [Traffic Offenses] case."

The circuit court granted Sardinha's motion, explaining that it did not "see how a complete account of the [Assault Offense] could be given without referring to the details of the [Traffic Offenses]."  In particular, the circuit court reasoned that even though the State could completely avoid discussing the Traffic Offenses, Sardinha would still be entitled to cross-examine the officers regarding the Traffic Offenses.

## C.   ICA Proceedings

The State appealed the circuit court's order granting Sardinha's motion to dismiss to the ICA.

On appeal, the State argued that "although it does not appear that the time and place factors are dependent on any bright-line time limit or distance between the multiple offenses, it appears that resolution of these factors is instead dependent on the circumstances that allegedly bind the multiple offenses[.]"  Citing State v. Akau, 118 Hawai'i 44, 57, 185 P.3d

9

229, 242 (2008), the State asserted that one of the key factors in determining whether multiple offenses are closely related is if one offense provides probable cause to suspect the defendant of committing the other.  According to the State, however, the underlying facts of the Traffic Offenses did not provide the officers with probable cause to suspect Sardinha of committing the Assault Offense.

The State further claimed that the Traffic Offenses were not related to the Assault Offense because "[t]he facts and issues involved in the [Traffic Offenses case] are completely different from the facts and issues presented in the Assault [Offense] charge."  Specifically, the relevant statutes raise distinct dispositive issues such that the witnesses to be used and the evidence to be offered would not significantly overlap.

Responding to the State's probable cause argument, Sardinha asserted that the facts of the Assault Offense actually provided the officers with probable cause to suspect Sardinha for the Traffic Offenses.  Sardinha also reiterated the points he made to the circuit court.

On January 15, 2021, the ICA ruled in a memorandum opinion that the Traffic Offenses and the Assault Offense were not so closely related in time, place, or circumstances that HRS § 701-109(2) compelled the joinder of the two proceedings.

10

In particular, the ICA noted that "[t]here is nothing in the record to indicate that the charges both entailed the same witnesses, or that any overlap in the evidence would occur, militating in favor of joinder." Moreover,

> In concluding that the offenses therein did not share similar circumstances, the Keliiheleua Court also pointed to the dissimilarity of "the statutory requirements of the alleged offenses[.]" [105 Hawai'i at 182, 95 P.3d at 613.] Here, the statutory requirements of the Inattention to Driving Charge, and the Assault Against [Law Enforcement Officer] charge, are dissimilar. There is no overlap in the elements that the State must prove for the [Traffic Offenses] or the [Assault Offense].

(First alteration in original; footnotes omitted.)

Addressing the State's probable cause argument, the ICA quoted State v. Maganis, 109 Hawai'i 84, 86, 123 P.3d 679, 681 (2005), for the premise that

> [p]robable cause exists when the facts and circumstances within one's knowledge and of which one has reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty.

However, the ICA concluded that "the facts and circumstances of the [Traffic Offenses] did not provide sufficient probable cause to suspect that Sardinha would subsequently head-butt Officer Sesoko, leading to the [Assault Offense]." The ICA further concluded that the Assault Offense did not provide the officers with probable cause to suspect Sardinha for the Traffic Offenses because "the record does not reflect how or when Sardinha was

11

identified as the driver in the [Traffic Offenses]." The ICA therefore vacated the circuit court's order.

This application for writ of certiorari followed.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss Indictment

A trial court's decision to dismiss an indictment is reviewed for an abuse of discretion. State v. Chong, 86 Hawai'i 282, 287-88 n.2, 949 P.2d 122, 127-28 n.2 (1997). "An abuse of discretion occurs 'where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" Carr v. Strode, 79 Hawai'i 475, 488, 904 P.2d 489, 502 (1995) (quoting Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

### B.  Statutory Interpretation

"The interpretation of a statute is a question of law which this court reviews de novo." Keep the N. Shore Country v. Bd. Of Land & Nat. Res., 150 Hawai'i 486, 503, 506 P.3d 150, 167 (2022) (citing State v. Ruggiero, 114 Hawai'i 227, 231, 160 P.3d 703, 707 (2007)).

## III.  DISCUSSION

On certiorari, Sardinha reiterates his assertion that the Traffic Offenses and the Assault Offense are so closely

related in time, place, and circumstances that they arose from a single episode. Seizing upon the State's analysis of Akau, Sardinha goes one step further to assert that if the Assault Offense provided probable cause for the officers to suspect Sardinha for the Traffic Offenses, then the circumstances element of the single-episode test is satisfied. Sardinha additionally repeats his claim that "it would be impossible to give a complete account of the facts of the [Assault Offense] without mentioning the [Traffic Offenses]."

However, Akau's reliance on probable cause to satisfy the circumstances element of the single-episode test is flawed. Treating the existence of probable cause as a dispositive factor improperly cuts short the single-episode test's requirement to consider whether "a complete account of one charge cannot be related without referring to details of the other charge." State v. Carroll, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981). An analysis of the statutory requirements of the alleged offenses as well as the underlying facts illustrates that there is negligible overlap between the Traffic Offenses and the Assault Offense. Additionally, the mere fact that Sardinha may cross-examine the officers regarding their knowledge of the Traffic Offenses during a trial for the Assault Offense does not

13

establish that the Assault Offense cannot be tried without reference to the Traffic Offenses.

## A. The requirements of HRS § 701-109(2) and the single-episode test.

Pursuant to HRS § 701-109(2),

> a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

This rule "reflect[s] a policy that defendants should not have to face the expense and uncertainties of two trials based on essentially the same episode." Commentary on HRS § 701-109(2). Furthermore, "[i]t is designed to prevent the State from harassing a defendant with successive prosecutions where the State is dissatisfied with the punishment previously ordered or where the State has previously failed to convict the defendant." Carroll, 63 Haw. at 351, 627 P.2d at 780 (citing State v. Solomon, 61 Haw. 127, 134, 596 P.2d 779, 784 (1979)).

Although it may be more straightforward to determine when multiple offenses are (1) "based on the same conduct," (2) "known to the appropriate prosecuting officer at the time of the commencement of the first trial," and (3) "within the jurisdiction of a single court"; it is not always clear whether multiple offenses "aris[e] from the same episode." See, e.g.,

14

Akau, 118 Hawai'i 44, 185 P.3d 229; Keliiheleua, 105 Hawai'i 174, 95 P.3d 605; State v. Servantes, 72 Haw. 35, 804 P.2d 1347 (1991); Carroll, 63 Haw. 345, 627 P.2d 776. Thus, this court has articulated that "the test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Carroll, 63 Haw. at 351, 627 P.2d at 780.

In light of the foregoing, HRS § 701-109(2) compels the State to join multiple offenses in a single trial when three elements and three sub-elements are satisfied. These are:

(1) the offenses are based on the same conduct or arise from the same episode;
(2) the offenses are all known to the appropriate prosecuting officer at the time of the commencement of the first trial; and
(3) the offenses are within the jurisdiction of a single court.

HRS § 701-109(2). In order for the offenses to arise from the same episode, they must

(a) be so closely related in time that a complete account of one charge cannot be related without referring to details of the other charge;
(b) be so closely related in place that a complete account of one charge cannot be related without referring to details of the other charge; and
(c) be so closely related in circumstances that a complete account of one charge cannot be related without referring to details of the other charge.

15

Carroll, 63 Haw. at 351, 627 P.2d at 780. If the State fails to try a defendant for multiple offenses that satisfy each of these elements in a single proceeding, the State is barred from bringing the related charges in a subsequent proceeding. HRS § 701-111(1)(b).[11]

**B.     The circumstances element of the single-episode test requires the court to consider whether the offenses involve similar facts and/or issues.**

   **1.     The origins of the single-episode test illustrate that multiple offenses are closely related in circumstances when the offenses are interrelated.**

As a preliminary matter, Carroll's single-episode test is based upon the test created by our sister court in State v. Boyd, 533 P.2d 795 (Or. 1975). See Carroll, 63 Haw. at 349, 351-52, 627 P.2d at 779-81. There, officers of the Eugene, Oregon police department executed a warrant to search defendant

---

[11]     HRS § 701-111(1)(b) (2014) provides:

> Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:
>
> (1)     The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701-110(3) and the subsequent prosecution is for:
>
> . . .
>
> (b)     Any offense for which the defendant should have been tried on the first prosecution under section 701-109 unless the court ordered a separate trial of the offense[.]

16

Sharon Boyd's home for evidence of a burglary. Boyd, 533 P.2d at 796. "In executing the warrant, the police discovered evidence of a number of other crimes, including a television set stolen some months before, a quantity of amphetamine tablets, and more than an ounce of marijuana." Id. An Oregonian prosecutor subsequently obtained two indictments against Boyd: one based on her possession of a stolen television and one for possession of amphetamines. Id. at 796-97. However, the prosecutor did not join the indictments for a single trial. Id. at 797.

According to Boyd, Oregon Revised Statutes § 132.560(2) required the prosecutor to join the indictments in a single proceeding because she would otherwise be subject to double jeopardy. Id. at 797-98. The statute provided:

> When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated.

Id. at 798 n.3 (emphasis added).

The Boyd court explained that the statute was designed to consolidate charges "where evidence of one offense would be relevant to evidence of another crime." Id. at 798 (quoting Proposed Oregon Criminal Procedure Code, § 84 cmt. at 50 (1972)). In turn, the court explained that the "initial

17

guideline" for joining charges is "if a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution." Id. at 799. The Oregon Supreme Court therefore "construe[d its] test of interrelated events as necessitating joinder only where the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge. Stated differently, the charge[s] must be cross-related." Id.

Applying its test to the facts before it, the Oregon Supreme Court explained that the two charges should have been brought together because "[t]he criminal code treats the fact of possession as a criminal act of a continuing nature. In this statutory sense, the [possession] of the television set and the drugs, existing at the same place and time, constitute a single occurrence." Id. at 801. In the same vein, "[i]f a defendant is charged with the possession of drugs, some of which had been acquired at one time and the rest at another time, it would seem clear that he would be entitled to object to multiple prosecutions." Id. However, the court pointed out, "[h]ad the defendant been charged with the actual theft of the television set on one occasion and the illegal purchase of drugs at another

18

time, it would be clear enough that the events would be unrelated and therefore obviously not unitary."  Id.

In light of the Boyd court's analysis, the fact that there may be some factual overlap between multiple charges does not require joinder.  Rather, the two charges must be "cross-related" such that "a complete account of one charge necessarily includes details of the other charge."  Id. at 799 (emphasis added).

2.   **This court's application of the circumstances element illustrates that multiple offenses are closely related in circumstances where there is substantive overlap between the legal issues and/or facts.**

Our adoption and application of the single-episode test similarly establishes that a significant level of factual and/or legal overlap is necessary before multiple offenses are "so closely related in . . . circumstances that a complete account of one charge cannot be related without referring to details of the other charge."  Carroll, 63 Haw. at 351, 627 P.2d at 780.

First, in Carroll, a private citizen reported that defendant Alfred Carroll started a fire on school property.  Id. at 346, 627 P.2d at 777.  Police officers found Carroll, conducted a routine search, and arrested him.  Id.  During the routine search, the arresting officer found a canister but

returned it to Carroll because the arresting officer thought the cannister contained nasal spray.  Id.  Less than an hour later, a different officer conducted a custodial search while booking Carroll and discovered a cannister of Mace in his possession.  Id.  The State subsequently charged Carroll with attempted criminal property damage in the second degree, and with possession of an obnoxious substance.  Id.

On appeal, Carroll encouraged this court to adopt the Boyd single-episode test to determine if both charges should have been tried together.  Id. at 349, 627 P.2d at 779.  This court agreed, explaining that

> proximity in time, place and circumstances of the offenses will necessarily enter into the policy considerations underlying HRS § 701-109(2).  Where the offenses occur at the same time and place and under the same circumstances, it is likely that the facts and issues involved in the charges will be similar.  The witnesses to be used and the evidence to be offered will probably overlap to the extent that joinder of the charges would be justified.  Compulsory joinder of offenses which share a proximity in time, place and circumstances . . . would also save the defendant and the State time and money required in the presentation of repetitive evidence.

Id. at 351, 627 P.2d at 780 (emphasis added).

Nevertheless, this court rejected Carroll's contentions that the underlying offenses satisfied the circumstances component of the single-episode test because "the arresting officer failed to recognize the illegal nature of the cannister at the time of the search for weapons.  As a result,

[Carroll's] possession of the Mace continued after his initial arrest, until the subsequent discovery and identification at the police station." Id. at 352, 627 P.2d at 781. In turn, the possession charge was not effected until the officers found that the cannister contained an obnoxious substance. Id.

Second, in Servantes, police officers saw a passenger smoking marijuana in defendant Robin Servantes's vehicle. 72 Haw. at 36, 804 P.2d at 1348. After the passenger stepped out of the vehicle, the officers saw a bag of marijuana next to Servantes's foot, arrested Servantes for promoting a detrimental drug in the third degree, and impounded his vehicle. Id. at 36-37, 804 P.2d at 1348. Based on the arrest, the officers obtained and executed a search warrant for the vehicle and discovered cocaine and drug paraphernalia. Id. at 37, 804 P.2d at 1348. The State then also charged Servantes with promoting a dangerous drug in the third degree and possession with intent to use drug paraphernalia. Id. This court held that the two offenses were closely related in circumstances because (1) the charges arose from Servantes's simultaneous loss of possession of both the marijuana and cocaine, and (2) the initial charge provided probable cause to suspect that Servantes possessed additional illicit substances. Id. at 39, 804 P.2d at 1349.

21

Third, in Keliiheleua, defendant Christopher Keliiheleua rear-ended a parked car on November 18, 2000, injuring a passenger in his own vehicle as well as the driver of the parked car. 105 Hawai'i at 176, 95 P.3d at 607. Later that same day, Keliiheleua obtained an insurance policy and filed a claim asserting that the accident occurred after he purchased the policy. Id. The State discovered Keliiheleua's actions and charged him with insurance fraud. Id. at 176-77, 95 P.3d at 607-08. On December 6, 2001, Keliiheleua entered a no contest plea on the insurance fraud charge. Id. at 177, 95 P.3d at 608. Nine months later, the State also charged Keliiheleua with negligent injury in the first degree for harming his passenger. Id. This court determined that "the circumstances of the cases were not similar" because "the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) are dissimilar." Id. at 182, 95 P.3d at 613. The court also rejected Keliiheleua's attempt to analogize his case with Servantes, noting that "there was no reason to suspect that subsequent to causing the motor vehicle accident, Defendant would obtain an insurance policy and then file a fraudulent insurance claim. Furthermore, unlike the offenses involved in Servantes, the negligent injury charge can be tried without mention of the fraud case." Id.

22

Considering our precedents, this court has declined to hold that multiple offenses arise from a single episode simply because the offenses share some common facts. For instance, in Carroll, the possession offense was only discovered because a booking officer searched Carroll after he was brought in for attempted criminal property damage. 63 Haw. at 346, 627 P.2d at 777. Similarly, in Keliiheleua, the insurance fraud offense necessarily shared some factual overlap with the negligent injury offense because both offenses followed the same vehicular collision. 105 Hawai'i at 176-77, 95 P.3d at 607-08.

Our precedents make clear, instead, that multiple offenses arise from the same episode when the offenses are legally connected and/or share substantial factual overlap. Although this court did not hold that the Carroll offenses or the Keliiheleua offenses satisfied the single-episode test, our discussion of the circumstances element in Carroll and Keliiheleua is illuminating. Again, in Carroll, this court suggested that when offenses arise from the same episode, "the facts and issues involved in the charges will be similar" and create an overlap in the evidence to be presented. 63 Haw. at 351, 627 P.2d at 780. The Keliiheleua court reiterated this explanation, stating that the offenses therein were not closely related in circumstances because "the facts and issues involved

23

in the charges (namely, the statutory requirements of the alleged offenses) are dissimilar."  105 Hawai‘i at 182, 95 P.3d at 613.

Although the Servantes court did not provide any significant analysis of why its underlying facts and issues were connected, it is evident that the offenses therein satisfied the similar facts and issues requirement identified by Carroll and Keliiheleua.  See 72 Haw. at 38-39, 804 P.2d at 1349.  At the time Servantes committed the relevant offenses, "[a] person commit[ted] the offense of promoting a detrimental drug in the third degree if he knowingly possesse[d] any marijuana or any Schedule V substance in any amount."  HRS § 712-1249(1) (1985).  Similarly, "[a] person commit[ted] the offense of promoting a dangerous drug in the third degree if he knowingly possesse[d] any dangerous drug in any amount."  HRS § 712-1243(1) (1985).  Lastly,

> [i]t [was] unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter.

HRS § 329-43.5(a) (Supp. 1992).[12]

---

[12]    Marijuana was classified as a Schedule I controlled substance. HRS § 329-14(d)(16) (Supp. 1992).
    Additionally, "drug paraphernalia" was defined in relevant part as

Based upon these statutory requirements, the proceedings against Servantes were legally and factually interrelated insofar as evidence which would prove Servantes promoted a detrimental drug in the third degree could also be used to prove Servantes possessed with the intent to use drug paraphernalia.  Specifically, the police found Servantes with "a clear plastic bag of marijuana . . . next to [his] foot." Servantes, 72 Haw. at 36, 804 P.2d at 1348.

In light of the foregoing, we clarify that multiple offenses must be legally and/or factually interrelated in order to be "so closely related in . . . circumstances that a complete account of one charge cannot be related without referring to details of the other charge."  Carroll, 63 Haw. at 351, 627 P.2d at 780.[13]

---

"all equipment, products, and materials of any kind which are used . . . in . . . storing[ or] containing . . . a controlled substance in violation of this chapter.  It includes, but is not limited to . . . [c]ontainers and other objects used . . . in storing or concealing controlled substances." HRS § 329-1 (Supp. 1992).

[13]   Given HRS § 701-109's "dual considerations of fairness to the defendant and society's interest in efficient law enforcement," State v. Carroll, 63 Haw. 345, 351, 627 P.2d 776, 780 (1981), we note that prosecutors may consider joining potentially related offenses even when not required to do so by HRS § 701-109 and this opinion.  Then, as the Boyd court noted,

> [t]he defendant may oppose, acquiesce in, or join in th[e] motion or, if the charges were initially brought together, move for severance.  The defendant will thus be forced to make a choice as to joinder or severance . . . .  Any objections the defendant might make to the prosecutor's choice would thereafter be waived.

3.   **The presence of probable cause alone does not establish a close relationship in circumstances between multiple offenses.**

Despite this court's prior examinations of facts and issues to evaluate whether multiple offenses arise from a single episode, the Akau majority deviated from our history by focusing on "whether the facts and circumstances of the first discovered offense provided sufficient probable cause to suspect that the defendant had committed or would commit the second discovered offense."  See Akau, 118 Hawai'i at 57, 185 P.3d at 242.

The Akau majority's focus on probable cause is problematic insofar as the mere presence of probable cause does not mean that "a complete account of one charge cannot be related without referring to details of the other charge." Carroll, 63 Haw. at 351, 627 P.2d at 780.

Conversely, multiple offenses may be closely related in circumstances even when one offense does not provide probable cause to suspect the defendant of committing the other.  For instance, in Boyd, the Oregon Supreme Court did not contemplate whether the fact that Boyd possessed a television set provided the police with probable cause to suspect that she also possessed illicit substances.  See generally 533 P.2d 795.

---

553 P.2d 795, 800 (Or. 1975).

Nevertheless, the Boyd court held that the offenses arose from the same episode because

> the [possession] of the television set and the drugs, existing at the same place and time, constitute a single occurrence. Once unlawful possession of goods, without more, is recognized as criminal conduct, there is no reason for fragmenting the criminal conduct into as many parts as there are different items of property, however acquired.

Id. at 801.

Thus, the presence or absence of probable cause is not dispositive in determining whether multiple offenses are so closely related in circumstances that a complete account of one charge cannot be related without referring to details of the other charge. Nevertheless, the presence of probable cause may be relevant where, for instance, there are common elements between the statutory requirements of multiple offenses. See, e.g., Servantes, 72 Haw. at 39, 804 P.2d at 1349.

We therefore hold that Akau was wrongly decided insofar as it held that the existence of probable cause is sufficient to compel the joinder of multiple offenses in a single proceeding.[14]

---

[14] Because probable cause is not sufficient to compel joinder of multiple offenses in a single proceeding, we need not address which offense was discovered first or if "the facts and circumstances of the first discovered offense provided sufficient probable cause to suspect that the defendant had committed or would commit the second discovered offense." Instead, as discussed below, compulsory joinder of the trial of the Traffic Offenses with that of the Assault Offense is not necessary in this case based on (1) a lack of overlap between the legal issues presented by the Traffic Offenses and the Assault Offense; and (2) a lack of overlap between the material facts of the Traffic Offenses and those of the Assault Offense.

**C.** **The Traffic Offenses and the Assault Offense are not so closely related in circumstances that a complete account of the Assault Offense cannot be related without referring to details of the Traffic Offenses.**

Turning to the offenses before us, HRS § 701-109(2) does not compel the joinder of the trial of the Traffic Offenses with that of the Assault Offense.

As a preliminary matter, Sardinha concedes that the Traffic Offenses may be tried without reference to the Assault Offense. Thus, the question is whether a complete account of the Assault Offense may be related without referring to details of the Traffic Offenses. Carroll, 63 Haw. at 351, 627 P.2d at 780. It may.

First, there is no overlap between the legal issues presented by the Traffic Offenses and the legal issue presented by the Assault Offense. In order to prevail on a charge of inattention to driving, the State was required to show that Sardinha "operate[d] any vehicle without due care or in a manner as to cause a collision with, or injury or damage to, as the case may be, any person, vehicle or other property." HRS § 291-12. Similarly, the State would have had to show that Sardinha drove without a valid license; drove while his license was revoked; drove, caused a collision resulting in property damage, and did not return to and remain at the scene of the collision;

drove while his license was revoked for operating a vehicle under the influence of an intoxicant; or drove an uninsured vehicle in order to prevail on the other cited traffic offenses. See generally HRS §§ 286-102(a), 286-132, 291C-13, 291E-62(a), 431:10C-104(a). In contrast, to prevail in a trial for the Assault Offense, the State has to establish that Sardinha "[i]ntentionally or knowingly cause[d] bodily injury to a law enforcement officer who [was] engaged in the performance of duty." HRS § 707-712.5(1).

Based purely on the elements of the charges, any evidence that would establish that Sardinha was responsible for the Traffic Offenses would not establish that Sardinha assaulted a law enforcement officer, and vice versa. See Keliiheleua, 105 Hawai'i at 182, 95 P.3d at 613 ("[I]n this case, the facts and issues involved in the charges (namely the statutory requirements of the alleged offenses) are dissimilar.").

Second, there is no substantive overlap between the material facts of the Traffic Offenses and those of the Assault Offense. Sardinha asserts that he "could have" cross-examined the officers about the Traffic Offenses "to evidence their perception of Sardinha . . . and their bias, interest and motive that may have colored their actions during the assault incident." Carroll forecloses Sardinha's attempt to bootstrap

29

the Traffic Offenses to the Assault Offense via potential cross-examination questions.  Defense counsel there could have cross-examined the booking officer about the officer's knowledge of the attempted arson.  See Carroll, 63 Haw. at 346, 627 P.2d at 777.  However, this court held that the Carroll offenses did not arise from a single episode.  Id.  Thus, we clarify that the relevant inquiry is not whether a defendant could elicit facts about the other offense, but whether the prosecution can fairly put on a complete case without reference to the other offense.

Sardinha also claims that the offenses arose from a single episode because the Assault Offense was "precipitated by the officers' recognition that the vehicle he was sitting in had been involved in the [Traffic Offenses]."  Sardinha's attempt to sanitize the Assault Offense and merge two unrelated events is unpersuasive.  The record establishes that Sardinha acted belligerently towards the officers before the officers even noticed the vehicle.  Officer Ngyuen reported that Sardinha "was yelling profanities at me and Officer S. SESOKO calling us 'fucking pussy bitches'."  Officer Sesoko similarly recounted that Sardinha "[s]tated he would kick our ass [sic] if we didn't have our badges."

Furthermore, the assault occurred because the officers detained Sardinha for a possible contempt warrant – not the

30

Traffic Offenses. Once the officers identified Sardinha, they detained Sardinha because of a possible contempt warrant — not because of his potential involvement with the Traffic Offenses. Sardinha then headbutted Officer Sesoko when the officers attempted to place Sardinha in the squad car to wait for confirmation of the warrant.

Accordingly, the facts and issues of the Traffic Offenses are dissimilar to those of the Assault Offense. See Keliiheleua, 105 Hawaiʻi at 182, 95 P.3d at 613. In turn, the offenses are not "so closely related in . . . circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Carroll, 63 Haw. at 351, 627 P.2d at 780. Compulsory joinder is therefore not required.[15]

## IV. CONCLUSION

In light of the foregoing, the Traffic Offenses and the Assault Offense did not arise from the same episode. The circuit court therefore acted contrary to the rules and principles of law in granting Sardinha's motion to dismiss, and

---

[15] Under the single-episode test, joinder is only necessary where multiple offenses are "so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." Carroll, 63 Haw. at 351, 627 P.2d at 780 (emphasis added). Because we hold that the Traffic Offenses and the Assault Offense were not closely related in circumstances, we need not address Sardinha's contentions that the offenses are closely related in time or place.

abused its discretion.  See Carr, 79 Hawai'i at 488, 904 P.2d at 502.  In turn, the ICA correctly determined that the State need not try Sardinha for both incidents in a single proceeding.

Accordingly, we affirm the ICA's February 18, 2021 Judgment on Appeal, which vacated the circuit court's October 14, 2016 Order Granting Defendant Bronson Sardinha's Motion to Dismiss with Prejudice.

| | |
|---|---|
| Thomas M. Otake<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Stephen K. Tsushima<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |

