**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000405
20-OCT-2025
08:06 AM
Dkt. 114 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
KAIIMI SKIP HIAPO, Defendant-Appellee

NO. CAAP-22-0000405

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-21-0000111)

OCTOBER 20, 2025

LEONARD, PRESIDING JUDGE, MCCULLEN AND GUIDRY, JJ.

OPINION OF THE COURT BY GUIDRY, J.

Plaintiff-Appellant State of Hawai'i (**State**) appeals from the "Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)], and Order Granting the Defendant[-Appellee Kaiimi Skip Hiapo's (**Hiapo**)] Motion to Dismiss for Violation of [Hawaii Revised Statutes (**HRS**)] § 701-109(2)[ (2014)]" (**Dismissal Order**), filed on April 27, 2022 by the Circuit Court of the Second Circuit (**circuit court**).[1]

---

[1] The Honorable Kelsey T. Kawano presided.

This appeal arises out of the State's separate prosecutions of Hiapo by a five-count felony indictment (the **Indictment**) in the circuit court, and by a two-count complaint (the **Abuse Complaint**) in the Family Court of the Second Circuit (**family court**) case no. 2FFC-21-0000086.[2]  The Indictment charged Hiapo with terroristic threatening and various firearms offenses.  The Abuse Complaint charged Hiapo with physical abuse of a family or household member.

At issue is whether the circuit court erred in concluding that, pursuant to HRS § 701-109(2), the alleged offenses charged in the Indictment and the Abuse Complaint arose "from a single episode," and in dismissing the Indictment in its entirety on that basis.  We hold that Hiapo's alleged terroristic threatening and physical abuse were part of the same episode of escalating domestic violence directed towards the complaining witness (**CW**), such that the circuit court did not abuse its discretion in dismissing Count 1 of the Indictment.  However, Hiapo's alleged carrying or possession of a firearm and ammunition, and discharge of a loaded firearm, were not "legally connected" and did not "share substantial factual overlap" with the physical abuse.  Hiapo's alleged firearms violations and

---

[2]     Pursuant to Hawaii Rules of Evidence Rule 201(c), this court takes judicial notice of the proceedings in family court case no. 2FFC-21-0000086.  Judicial notice is appropriate because the proceedings are a significant component of the present inquiry.

physical abuse therefore did not arise out of the same episode, and the circuit court abused its discretion in dismissing Counts 2 through 5 of the Indictment. Accordingly, we affirm in part and vacate in part the Dismissal Order.

## I.     Background and Proceedings Below

On February 1, 2021, the State filed the Indictment, which charged Hiapo with the following five counts:

> COUNT ONE: . . .
>     That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo], with the intent to terrorize, or in reckless disregard of the risk of terrorizing [the CW], did threaten, by word or conduct, to cause bodily injury to [the CW], with the use of a dangerous instrument or a simulated firearm, to wit, a .22 caliber rifle, thereby committing the offense of **Terroristic Threatening in the First Degree** in violation of Section 707-716(1)(e) of the [HRS].
>
>         . . . .
>
> COUNT TWO: . . .
>     That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo] did intentionally fire a firearm in a manner which recklessly placed another person in danger of death or serious bodily injury, thereby committing the offense of **Reckless Endangering in the First Degree** in violation of Section 707-713(1) of the [HRS].
>
>         . . . .
>
> COUNT THREE: . . .
>     That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo] did intentionally or knowingly carry or possess an object, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a loaded firearm other than a pistol or revolver, to wit, a loaded .22 caliber rifle, and did intentionally, knowingly, or recklessly fail to confine the loaded firearm to his place of business, residence, or sojourn, other than carrying an unloaded firearm in an enclosed container from the place of purchase to his place of business, residence, or sojourn or between those places and a place of repair, a target range, a licensed dealer's place of business, an organized, scheduled firearms show or exhibit, a place of formal

3

> hunter or firearm use training or instruction, or a police station, thereby committing the offense of **Place to Keep Loaded Firearms Other than Pistols and Revolvers** in violation of Section 134-23(a) of the [HRS].
>
> COUNT FOUR: . . .
>     That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo], while on a public highway, with knowledge or reckless disregard of the substantial and unjustifiable risk that he was on a public highway, did intentionally or knowingly carry on his person, or have in his possession, or did carry in a vehicle, an object, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a firearm loaded with ammunition, to wit, a loaded .22 caliber rifle, thereby committing the offense of **Carrying or Possessing a Loaded Firearm on a Public Highway** in violation of Section 134-26(a) of the [HRS].
>
> COUNT FIVE: . . .
>     That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo] did intentionally or knowingly carry or possess an object, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was ammunition, and did intentionally, knowingly, or recklessly fail to confine the ammunition to his place of business, residence, or sojourn, other than carrying the ammunition in an enclosed container from the place of purchase to his place of business, residence, or sojourn or between those places and a place of repair, a target range, a licensed dealer's place of business, an organized, scheduled firearms show or exhibit, a place of formal hunter or firearm use training or instruction, or a police station, thereby committing the offense of **Place to Keep Ammunition** in violation of Section 134-27(a) of the [HRS].

(Emphasis added.)

On March 4, 2021, the State separately filed the two-count Abuse Complaint in family court. The Abuse Complaint, as amended in May 2021, charged Hiapo with:

> COUNT ONE: . . .
>     That on or about the 17th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo], did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household member, to wit, [the CW], thereby committing the offense of **Abuse of Family or Household Member** in violation of Sections 709-906(1) and/or (5)(a) of the [HRS].

COUNT TWO: . . .
That on or about the 18th day of December, 2020, in the County of Maui, State of Hawaii, [Hiapo], did intentionally, knowingly or recklessly engage in and cause physical abuse of a family or household member, to wit, [the CW], thereby committing the offense of **Abuse of Family or Household Member** in violation of Sections 709-906(1) and/or (5)(a) of the [HRS].

(Emphasis added.)

Hiapo's circuit court felony prosecution and family court abuse prosecution proceeded separately, though the record reflects that the State and defense discussed the possibility of a "global resolution" that would address the charges in both cases.  At defense counsel's request, the family court continued the pretrial conference multiple times, to give the parties additional time to discuss the possibility of a plea agreement.

Ultimately, the State and Hiapo were unable to reach a plea agreement.  In March 2022, Hiapo requested to enter a change in plea in the family court case.  The family court accepted Hiapo's new plea of no contest to the two counts charged by the Abuse Complaint, and Hiapo was sentenced to two years of probation.

In April 2022, shortly after pleading no contest to the family court abuse charges, Hiapo moved in circuit court to dismiss the Indictment.  Hiapo contended that the State violated HRS § 701-109(2) by charging him in two separate prosecutions, 2FFC-21-0000086 and 2CPC-21-0000111, for offenses that arose out

of the "same domestic abuse episode."  The circuit court granted

Hiapo's motion to dismiss, explaining, in relevant part,

> The applicable legal standard is the same episode
> test. . . .
>
> . . . .
>
> [M]oving on to the legal test of same episode.
> Compulsory joinder, this rule requires dismissal of a
> subsequent charge under the same episode analysis, which
> means that all offenses that grow out of a single criminal
> act[,] occurrence, episode[,] or transaction are considered
> the same offense for purposes of determining whether a
> subsequent prosecution is barred.
>
> And under that test[,] once an individual has been
> prosecuted for one offense, that individual [cannot] be
> later prosecuted for another offense committed in the same
> episode, even if the offenses were committed by distinct
> acts.  That's the holding in [State v. Carroll, 63 Haw.
> 345, 627 P.2d 776 (1981)], and [State v. Lessary, 75 Haw.
> 446, 865 P.2d 150 (1994)].
>
> So under [State v. Akau, 118 Hawaiʻi 44, 185 P.3d 229
> (2008),] the subsequent prosecution is barred where the
> three requirements for compulsory joinder are met.
>
> First, this was a distinct act, but was during the
> same episode.  Two, the prosecutor knew of the subsequent
> charge at the time of the prior charge was brought [sic].
> And three, the same [c]ourt has jurisdiction over both
> prior and subsequent charges.
>
> In this case all three of those requirements have
> been met.
>
> With regard to looking at analysis of the
> circumstances, there's been a lot of argument about that
> also.  And under [Akau,] the Hawaiʻi Supreme Court has
> adopted a probable cause analysis for determining the
> circumstances factor of the same episode test.
>
> And the [c]ourt states in [Akau] that when examining
> the circumstances of offenses alleged to be part of the
> same episode, the [c]ourt is focused primarily on whether
> the facts and circumstances of the first discovered offense
> provided . . . sufficient probable cause to suspect that
> [Hiapo] had committed or would commit the second discovered
> criminal offense.  And that absolutely is established in
> this case.

The circuit court entered FOFs and COLs, the following of which are challenged by the State on appeal,

[FOF] 4. Exhibit A provides the following:

a. On December 17, 2020 at about 7:00 p.m., [Hiapo] and the [CW], were fighting within their Pukalani residence. During the fight, the CW reported that [Hiapo] threw a set of keys that hit her on the forehead.

b. The next morning, December 18, 2020 at about 7:30 - 10:00 a.m., their fight continued. The CW reports that [Hiapo] forcibly grabbed her by the arms, shoved her to the side, and then left their residence.

c. The State subsequently charged [Hiapo] with two counts of Abuse of a Family or Household Member based upon the events of December 17 and 18, 2020. These two criminal offenses were charged together in 2FFC-21-086.

d. On December 18, 2020 at approximately 12:23 p.m., the CW received a call from [Hiapo] where she reported [Hiapo] made threats towards her and mentioned a gun.

e. After 1:00 p.m., [Hiapo] went to the CW's current location at her grandmother's house. Upon arriving, [Hiapo] screamed and demanded to see the CW, he made threats regarding her, and then discharged a rifle once into the air. A witness reported that he grabbed the muzzle of [Hiapo's] rifle, a struggle ensued, and [Hiapo] discharged the rifle twice more.

f. At approximately 1:50 p.m., MPD officers arrived on scene. At approximately 2:15 p.m., MPD Officer Corrine Chang interviewed the CW. During the interview, the CW reported the abuse on the evening of December 17, 2020, the abuse earlier in the day on December 18, 2020, the threats made by [Hiapo] over the phone, and [Hiapo's] conduct prior to MPD arriving on scene.

g. At approximately 3:02 p.m., MPD Detective Mark Hada interviewed [Hiapo] at the

7

Wailuku Police Station. [Hiapo] discussed the entire criminal episode from December 17, 2020 through the morning and afternoon of December 18, 2020.

    h. On or about January 4, 2021, Detective Hada produced a report that was forwarded to the prosecuting attorney's office for review. In his report, Detective Hada, summarized the entire criminal episode, and suggested criminal charges that included all the charges in this case, as well as those ultimately charged separately under 2FFC-21-086.

    . . . .

[COL] 10. Additionally, the key witnesses in both cases are largely the same, MPD investigated the entire criminal episode at one time, and Detective Hada identified probable cause and suggested all the criminal charges in his report.

[COL] 11. Weighing the three factors of the Carroll test, the [circuit court] concludes the criminal charges in both cases arises from a single episode, and therefore must be joined under HRS § 701-109(2).

    . . . .

[COL] 13. The State charged these cases separately, did not move to join the cases, and has therefore violated HRS § 701-109(2).

[COL] 14. Because a judgment has already been entered in 2FFC-21-086, subsequent prosecution of this matter is barred by HRS § 701-109(2).

This appeal followed.

## II.  Discussion

On appeal, the State contends that the circuit court erred by dismissing the Indictment. We review the circuit court's dismissal of the Indictment for abuse of discretion. State v. Borge, 152 Hawai'i 458, 464, 526 P.3d 435, 441 (2023).

8

Pursuant to HRS § 701-109(2),

[A] defendant shall not be subject to separate trials for **multiple offenses based on the same conduct or arising from the same episode**, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

(Emphasis added.)

As the Hawai'i Supreme Court has explained,

[U]nder [HRS] § 701-111(1)(b)[ (2014)], the State is prohibited from subsequently prosecuting a defendant for any offense which should have been joined in a prior trial under § 701-109(2).

Section 701-109(2) reflects a policy that all charges that arise under one episode be consolidated in one trial so that a defendant need not face the expense and uncertainties of multiple trials based on essentially the same episode. Section 701-109(2) is designed to prevent the State from harassing a defendant with successive prosecutions where the State is dissatisfied with the punishment previously ordered or where the State has failed to convict the defendant.

State v. Servantes, 72 Haw. 35, 38, 804 P.2d 1347, 1348 (1991) (citations omitted).

It is undisputed that the offenses charged in the Indictment and Abuse Complaint were known to the State "at the time of the commencement of the first trial," and that the offenses were within the jurisdiction of the circuit court. See HRS § 701-109(2). At issue, therefore, is whether the offenses charged by the Indictment and Abuse Complaint were "so closely related in time, place[,] and circumstances that a complete account of one charge cannot be related without referring to details of the other charge," such that they should have been

tried in the same proceeding.  See Carroll, 63 Haw. at 351, 627

P.2d at 780.

In State v. Sardinha, which was decided while this

case was pending on appeal,[3] the Hawai'i Supreme Court explained

the "circumstances element" of the "single-episode test" as

follows,

> [T]he fact that there may be some factual overlap between
> multiple charges does not require joinder.  Rather, **the two
> charges must be cross-related such that a complete account
> of one charge necessarily includes details of the other
> charge.**
>
> . . . .
>
> Considering our precedents, this court has declined to hold
> that multiple offenses arise from a single episode simply
> because the offenses share some common facts. . . .
>
> Our precedents make clear, instead, that **multiple offenses
> arise from the same episode when the offenses are legally
> connected and/or share substantial factual overlap.** . . .
>
> . . . .
>
> [T]he presence or absence of probable cause is not
> dispositive in determining whether multiple offenses are so
> **closely related** in circumstances that a complete account of
> one charge cannot be related without referring to details
> of the other charge.  Nevertheless, the presence of
> probable cause may be relevant where, for instance, there
> are common elements between the statutory requirements of
> multiple offenses.

152 Hawai'i 304, 309-14, 526 P.3d 281, 286-91 (2023) (emphasis

added) (cleaned up).

Sardinha clarified that probable cause was no longer

determinative of whether multiple offenses present "closely

---

[3]    Sardinha was issued after the parties submitted briefs in this
appeal.  Because the parties relied on Akau, which was abrogated by Sardinha,
this court ordered the parties to file supplemental briefs addressing and
applying Sardinha's clarification of the "single-episode test."

related" circumstances. Id. at 314, 526 P.3d at 291. Hence, the fact that one charged offense constituted "probable cause" for another charged offense does not necessarily mean that the two charged offenses are closely related in circumstances. And, conversely, the fact that one charged offense does not constitute "probable cause" for another does not necessarily mean that the two charged offenses are *not* closely related in circumstances.

Here, it appears that the circuit court focused primarily on "whether the facts and circumstances of the first discovered offense provided . . . sufficient probable cause to suspect that [Hiapo] had committed or would commit the second discovered criminal offense." That is no longer the test. Nevertheless, applying the standard set forth in Sardinha, we hold that the circuit court did not abuse its discretion by dismissing Count 1 of the Indictment. We further hold that the circuit court *did* abuse its discretion by dismissing Counts 2 through 5 of the Indictment.

**A. Count 1**.

Count 1 charged that Hiapo threatened to cause bodily injury to the CW using a rifle "with the intent to terrorize, or in reckless disregard of the risk of terrorizing[,] . . . thereby committing the offense of Terroristic Threatening in the First Degree."

The record reflects a strong factual correlation between Hiapo's alleged terroristic threatening and his physical abuse of the CW. The CW was the target of both the "physical abuse," as well as the alleged "threat[], by word or conduct, to cause bodily injury"; as such, the State would need to adduce closely related evidence to prove the two charges.

The State's Abuse Complaint relates to allegations that on the evening of December 17, while the CW was getting ready to leave their home to go to work, Hiapo threw a set of keys at the CW which injured the CW's face. When the CW returned home from work the next morning, Hiapo continued the abuse by "forcibly grabb[ing the CW] by the arms and shov[ing] her to the side." Hiapo then left the home.

At the sentencing hearing, the State explained that "what happened afterwards constitutes the [felony] case that's pending in the [circuit court] courtroom." It appears that Hiapo left home to cool off, after which he drove back home and found that the CW and their children were not there. Hiapo then drove to the CW's grandmother's home in Paia because he thought the CW had gone there with the children. Hiapo allegedly called the CW, threatened her safety, and told the CW that he was coming for her. The terroristic threatening count, which charges that Hiapo "threaten[ed], by word or conduct, to cause

bodily injury" to the CW, appears to be premised on that phone call.

As outlined above, the CW would be a key witness for the State with regard to the abuse and terroristic threatening charges. The CW's testimony would be important in establishing both Hiapo's physical abuse and the alleged threat of bodily injury towards the CW. Given the cross-relationship between Hiapo's abuse of and alleged terroristic threatening towards the CW, the State would need to adduce closely related evidence to prove both charges.

Moreover, the physical abuse, and the events that occurred at Hiapo's home on the evening of December 17 and the morning of December 18, provide context for the alleged terroristic threatening that occurred on the afternoon of December 18.

In addition, these offenses were closely related in time and place. The abuse occurred at Hiapo and the CW's shared home on the evening of December 17 and morning of December 18, and the alleged terroristic threatening occurred in the afternoon of December 18 when Hiapo allegedly called the CW while the CW was at her grandmother's house, which was within driving distance of their shared home.

Under these circumstances, the physical abuse of the CW and the alleged terroristic threatening towards the CW were

all part of the escalating violence directed at the CW by Hiapo. We therefore hold that Hiapo's physical abuse and alleged terroristic threatening were multiple offenses arising from a single episode, and the State was required to bring these charges in the same proceeding.

**B.   Counts 2 through 5**.

Counts 2 through 5 of the Indictment charged Hiapo with various offenses involving the carrying or possession of a firearm and ammunition, and the discharge of a loaded firearm at the CW's grandmother's home in Paia on December 18.  Count 2 alleges that Hiapo recklessly endangered another person through his discharge of a firearm.  Counts 3 through 5 allege that Hiapo intentionally or knowingly carried a loaded firearm and ammunition, in violation of the State's place to keep laws, and that he carried or possessed a loaded firearm on a public highway.

In order to prove Counts 2 through 5, the State would need to introduce evidence establishing Hiapo's possession and firing of a rifle at the grandmother's home in Paia through, for example, the testimony of those persons at the home who witnessed the incident.[4]  It appears that the CW, although at the

---

[4]     Pursuant to the transcript of the grand jury proceeding, which was made part of the record, a witness testified to observing Hiapo arrive at the CW's grandmother's home in his truck on December 18, stop on the road, jump out of the truck, and grab "[a] hunting rifle" from the truck.  The
(continued . . .)

grandmother's home in Paia at the time of the alleged incident, did not witness Hiapo discharge the rifle.

We agree with the State that Counts 2 through 5 of the Indictment, and the charges of "physical abuse" set forth in the family court Abuse Complaint, involved "different witnesses, different harm, different methods, and different weapons" -- i.e., different circumstances. The statutory elements of reckless endangering, place to keep loaded firearms and ammunition, and carrying or possessing a loaded firearm on a public highway do not overlap with those of physical abuse of a family or household member. It also appears that the State would be able to introduce non-overlapping evidence to prove Counts 2 through 5, and that the prosecution of Counts 2 through 5 would not require the State to introduce evidence establishing the physical abuse.

We therefore hold that the circuit court abused its discretion in dismissing Counts 2 through 5 of the Indictment, as those charges were not "legally connected" nor did they "share substantial factual overlap" with the charges in the Abuse Complaint. Counts 2 through 5, and the charges in the

---

[4](. . .continued)
witness testified that he "approach[ed Hiapo] . . . when [Hiapo] had the gun," that the witness grabbed the gun while Hiapo was holding it, and that Hiapo fired the gun three times while they both held onto it.

Abuse Complaint, did not circumstantially arise from a single episode.[5]  See Sardinha, 152 Hawai'i at 312, 526 P.3d at 289.

As explained above, we hold that the circuit court did not abuse its discretion in dismissing Count 1 of the Indictment, but that it did abuse its discretion in dismissing Counts 2 through 5.  On this basis, we affirm the circuit court's dismissal of Count 1, and vacate the circuit court's dismissal of Counts 2 through 5.

Although we are unaware of a prior appellate decision that, in the context of HRS § 701-109(2), affirms the circuit court's dismissal of one count in a charging document while vacating the dismissal of the remaining counts, it is appropriate for us to do so under the facts and circumstances of this case.

III.  **Conclusion**

We affirm the circuit court's Dismissal Order as to Count 1 of the Indictment.  We vacate the circuit court's Dismissal Order as to Counts 2 through 5 of the Indictment, and we further vacate the circuit court's FOFs and COLs related to

---

[5]  Given our determination that Counts 2 through 5 of the Indictment do not involve closely related "circumstances," we need not consider whether these charges are closely related in "time" and "place."

Counts 2 through 5.  We remand for further proceedings consistent with this opinion.

On the briefs:

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney
County of Maui,
for Plaintiff-Appellant.

Phyllis J. Hironaka,
Deputy Public Defender,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge